**Rene Jaques VILLEGAS A/K/A "JAP", Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 13–89–009–CR.**

Court of Appeals of Texas, Corpus Christi.

May 17, 1990.

Mark Alexander, McAllen, for appellant.

Rene Guerra, Dist. Atty., Edinburg, for appellee.

Before NYE, C.J., and BENAVIDES and SEERDEN, JJ.

## OPINION

BENAVIDES, Justice.

A jury found Rene Jaques Villegas guilty of capital murder and assessed punishment at life imprisonment in the Texas Department of Corrections. By thirteen points of error, appellant alleges error in all phases of the trial. We affirm the judgment of the trial court.

## I. FACTS

The facts of this case are gruesome. About 10 p.m. February 9, 1987, after drinking hard liquor during the day, appellant was dropped off at the house where his aunt and grandmother lived and where he used to live. He entered the residence through a window and, unprovoked, savagely attacked his aunt with his fists and a butter knife. After repeatedly beating his father's sister about the head and the rest of her body, choking her, and stabbing her in numerous places, including her vagina, appellant attempted to drown her in her own bathtub.[1]

Appellant left his aunt in the bathtub and ransacked her house, taking jewelry, clothing, various bank papers and her car. He drove her car to Mission where, between 12 p.m. and 1 a.m., he and at least one other individual stripped the car and abandoned it near a canal.

The next morning, February 10, 1987, the McAllen police acted on a citizen's tip and went to appellant's aunt's house to investigate possible foul play. Appellant's aunt was discovered dead in the bathtub. Physical evidence in the form of photographs, fingerprints, shoe prints, clothing, blood samples and hair samples were collected at the house.

At about the same time the house was being searched, several of appellant's friends reported appellant's actions and his admission made to them regarding what he had done to his aunt to the Mission police and to the McAllen police. A warrant for appellant's arrest for his aunt's murder was issued after corroborating evidence was discovered.

Appellant was arrested late that day, and by that time had seen and told at least eight people that he had killed his aunt. Some of these witnesses testified that appellant was calm when he told them about the events of the killing. At the time of his arrest, appellant had scratches on his face and bruises on his neck and chest. He had told several people that his aunt had

1. Medical testimony established that appellant's aunt was alive at the time she was stabbed and that she subsequently died from asphyxia of the ligature, a circular compression of the neck, and that she could have been strangled with an article of clothing.

scratched him in the face when he grabbed her during his attack on her. His clothes and shoes had blood stains on them and the blood was the same type as his aunt's. Fingerprints which ·matched appellant's were found at his aunt's house and in her abandoned car. Bloody footprints with a shoe pattern resembling that of appellant's were also found at his aunt's house.

Immediately after his arrest, appellant was transported to the McAllen police office where, within thirty minutes after being advised of his rights, he confessed to killing his aunt and taking her car. The next morning appellant was arraigned and subsequently made a second confession which clarified his first. At the time he gave the second confession, appellant consented to giving hair, skin, blood, and saliva samples, which were subsequently obtained.

We address appellant's points of error in chronological groups.

## II. PRE–TRIAL MOTIONS

■ Appellant asserts two points of error concerning pre-trial matters. By point of error number six, appellant contends that the trial court committed reversible error in not requiring the State to turn over the affidavits shown to the Grand Jury for his inspection. At a hearing on various motions, appellant orally moved to have the State produce witness affidavits which were produced to the grand jury. The trial judge denied his motion. Appellant subsequently filed a written version of his oral motion.

Appellant argues that his various Constitutional rights are personal since they are required to be waived by him if waiver occurs, and that he has a personal right to see all evidence against him, including the affidavits shown to the grand jury. Appellant attempts to separate his right to view the evidence from that of his attorneys and asserts that he personally should get copies from the State. Appellant's attorneys were allowed to view these affidavits and witnesses' statements.

■ An accused is not ordinarily entitled to inspect grand jury testimony to ascertain evidence the prosecution has or for discovery in general. *Garcia v. State*, 454 S.W.2d 400, 403 (Tex.Crim.App.1970). This is true whether the request is made before trial or during trial. *Id.* The production of grand jury testimony lies within the sound discretion of the trial court, which may permit the accused to inspect such testimony when "some special reason" exists or where a "particularized need" is shown so as to outweigh the traditional policy of grand jury secrecy. *McManus v. State*, 591 S.W.2d 505, 523 (Tex. Crim.App.1979); *see also* Tex.Code Crim. Proc.Ann. art. 39.14 (Vernon 1979). If the prosecutor uses or introduces portions of the grand jury testimony during the course of the trial the defense is entitled to inspect and use such testimony that covers the same subject involved in the portions used and introduced by the prosecution. *Garcia*, 454 S.W.2d at 403.

The State allowed appellant's attorneys to review the affidavits, and we decline to separate appellant's rights from those of his attorneys. We assume that since counsel reviewed the affidavits, that appellant was afforded the benefits of such a review in his legal defense. No argument is presented that he was not afforded the benefits of counsel's review or that counsel withheld the contents or substance of the affidavits from appellant. In any event, appellant did not state any "special reason" or any "particularized need" for the witness affidavits at the hearing or in his written motion nor does he assert one on appeal. Appellant's sixth point of error is ·overruled.

■ Appellant's point of error number seven contends that the trial court committed reversible error when it failed to dismiss the defendant's appointed trial counsel on the defendant's pro se motion. Appellant filed a pro se motion in which he requested that the court dismiss his two appointed attorneys and appoint two attorneys of his choice. After a hearing on this motion, the trial court denied it.

Appellant argues that he was forced to accept two attorneys he felt had not adequately prepared his case, who were not interested in defending him with zeal and who did not believe him. Appellant further urges that the above reasons are those which the court should have used to dismiss his attorneys. Appellant's alternative argument is that he should have been allowed to waive counsel and proceed on his own. Appellant, however, never advised the judge that he wanted to represent himself; he only asked the judge for different attorneys.

■ Appellant has the burden of proving that he is entitled to a change in counsel. *Malcolm v. State*, 628 S.W.2d 790, 791 (Tex.Crim.App.1982). The record indicates that appellant did not offer any evidence in support of his position that the attorneys appointed to represent him should be dismissed. In fact, the evidence at the hearing strongly supported the retention of appellant's court-appointed counsel.

When the record demonstrates that a defendant's court-appointed attorney provided adequate representation for him, then he was not entitled to a change of attorneys. *Malcolm*, 628 S.W.2d at 791–92. The record shows a vigorous and competent defense, notwithstanding the tremendous evidence against appellant. Appellant's seventh point of error is overruled.

## III. GUILT PHASE

Appellant raises nine points of error concerning the guilt phase of his trial. By one point of error, appellant challenges the trial court's denial of a Motion for Mistrial; by five points of error, appellant challenges the admission of various types of evidence; by two points of error, appellant challenges parts of the jury charge; and by one point of error, appellant challenges the State's jury argument.

### MOTION FOR MISTRIAL

■ Appellant claims error in the trial court's failure to grant a motion for mistrial after a State's witness, who testified on direct examination, refused to testify on cross-examination. Appellant contends that this violated his rights to confrontation and to effective counsel under the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Texas Constitution.

On September 12, 1988, the State called Juan Muniz, one of appellant's friends, as its first witness. Muniz testified on direct examination that he was one of the individuals who saw appellant during the night after appellant's aunt was killed. He also testified to what appellant told him and several others about killing his aunt and how appellant's clothes and face appeared. When Muniz began testifying about what was done with appellant's aunt's car, the court admonished him that he may be testifying regarding matters that may incriminate him and that he had a right to remain silent. Upon Muniz's request, an attorney was appointed to represent him. Although Muniz was offered immunity from prosecution in exchange for his testimony, his attorney advised him not to testify and to claim protection from testifying under the Fifth Amendment of the United States Constitution. Muniz did so.

Upon re-examination, on September 13, 1988, Muniz continued to refuse to answer any questions. Appellant's attorney moved for a mistrial on Constitutional grounds. The motion for mistrial was denied.

Muniz was recalled to the witness stand on September 22, 1988, and after a further refusal to testify, appellant's attorney preserved Muniz's written statements to the police in a bill of exception as evidence of what Muniz's testimony would have been. Appellant again moved for a mistrial and the State asked for an instruction to the jury to disregard Muniz's testimony. Appellant's attorney objected, stating that the instruction was insufficient to cure the prejudice, and renewed his motion for a mistrial. The court gave the jury an instruction to disregard Muniz's testimony. During deliberation, the jury sent a note to the judge asking why they were told to disregard Muniz's testimony. The judge further instructed the jury that the court made its rulings on matters of law and that

they were not to concern themselves with the reasons for the rulings.

Appellant argues that his right to confrontation outweighs Muniz's Fifth Amendment right to keep from testifying. Appellant claims that he was prevented from eliciting impeaching evidence and evidence favorable to himself, such as evidence that he may have been intoxicated at the time of the killing, which may have mitigated the punishment. Appellant further argues that the State was able to elicit damaging testimony from Muniz and that the instruction from the trial court to the jury to disregard Muniz's testimony was insufficient to cure any harm the testimony caused.

The State contends that Muniz's Fifth Amendment right to silence outweighs appellant's right to confrontation. The State further asserts that Muniz's testimony was not as important as appellant claimed because another witness testified to virtually the same information. The State also points out that Muniz's testimony regarding appellant's first account of his confrontation with his aunt was only a small part of trial evidence which showed that appellant made similar statements to a number of other individuals. The State argues that the trial court's instruction to the jury was sufficient to cure any harm which may have occurred and that the trial judge was correct in denying appellant's motion for mistrial.

Appellant cites two cases in support of his arguments. He first cites *Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). One of Douglas' co-defendants was called by the State and asserted his Fifth Amendment rights and refused to testify upon direct-examination. Upon the State's request, the court designated the witness as hostile and permitted the State to cross-examine him by reading his confession and asking him if he said each line, as it was read. The witness repeatedly asserted his Fifth Amendment rights in front of the jury and refused to testify. The trial judge initially threatened to hold the witness in contempt for not testifying but did not proceed with the contempt citation apparently because the witness was sentenced for the crime about which he refused to testify during the time of Douglas' trial. *Douglas*, 380 U.S. at 416, 85 S.Ct. at 1075. This refusal to testify prevented Douglas' attorney from cross-examining the witness regarding the confession. *Id.* at 419, 85 S.Ct. at 1077. The Supreme Court determined that this procedure violated Douglas' right to confrontation.

*Douglas* is distinguishable from this case for the following reasons. In *Douglas*, the State knew that the witness was going to assert his Fifth Amendment rights before he was called, yet they persisted in calling him to the stand and questioning him. Further, there was repeated "testimony" elicited in *Douglas* after the witness asserted his Fifth Amendment rights. The trial judge did not pursue the contempt citation in an effort to get the witness to testify. All this was done in front of the jury. In this case, the State called Muniz, not knowing that he was going to assert his Fifth Amendment rights. No testimony was elicited once Muniz asserted his Fifth Amendment rights. Muniz was offered immunity and the trial judge found Muniz in contempt of court and fined him in an effort to get him to testify. This was done out of the presence of the jury. We find *Douglas* distinguishable and not controlling.

Appellant next cites *Webb v. Texas*, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972) in support of his arguments. In *Webb*, the trial judge extensively lectured a defense witness about perjury, to the extent that the witness was intimidated and refused to testify. *Webb*, 409 U.S. at 95–96, 93 S.Ct. at 352. The Supreme Court found that this action violated the defendant's Fourteenth Amendment rights to due process. In this case, Muniz was a witness for the State, not the defense. Further, he was not intimidated to not testify; the trial judge tried to compel Muniz to testify by citing him with contempt of court. Finally, appellant is complaining of a violation of his Sixth Amendment right to confrontation, not a violation of this Fourteenth Amendment right of due process. We find *Webb* distinguishable and not controlling.

When appellant was prevented from cross-examining Muniz, the trial judge recognized that a possible Sixth Amendment violation had arisen and instructed the jury that they were to disregard Muniz's testimony. The usual remedy when a government witness invokes the Fifth Amendment on cross-examination on matters to which the witness testified on direct-examination is to strike the witness' direct testimony. *United States v. Morgan,* 757 F.2d 1074, 1077 (10th Cir. 1985); *see also, United States v. Cardillo,* 316 F.2d 606 (2d Cir.1963), *cert. denied,* 375 U.S. 822, 84 S.Ct. 60, 11 L.Ed.2d 55 (1963). We note that appellant does not claim that there was any jury misconduct regarding whether the jury followed the trial judge's instruction. We generally presume that a jury followed the instruction given by the trial judge, in the manner presented. *Rose v. State,* 752 S.W.2d 529, 554 (Tex.Crim. App.1987); *Barry v. State,* 700 S.W.2d 271, 272 (Tex.App.—Corpus Christi 1985, pet. ref'd).

The instruction to disregard all of Muniz's testimony effectively removed him as a witness and there was no need to impeach his testimony. The right to confrontation by way of cross-examination applies to witnesses. *See Chambers v. Missisippi,* 410 U.S. 284, 284, 93 S.Ct. 1038, 1038, 35 L.Ed.2d 297 (1973); *Hostetter v. State,* 527 S.W.2d 544, 547 (Tex.Crim.App. 1975). Hence, once Muniz was no longer a witness, he was no longer a person to be confronted. As such, appellant no longer had a right to confrontation with regard to Muniz because there is no right to confrontation of a non-witness. Accordingly, we find that appellant had no right to confrontation through cross-examination of Muniz and that any complaint regarding violation of any such right must fail. Further, although we do not need to reach a harm anaylsis, Muniz's testimony regarding intoxication would have been cumulative, and any error involving consideration of his testimony harmless, in light of the overwhelming evidence and the fact that other wit-

nesses and appellant's own confession duplicated Muniz's testimony. We overrule appellant's first point of error.

### EVIDENCE

Appellant raises five points of error concerning the admission of various types of evidence. Appellant complains of the admission of two confessions, several photographs, evidence seized from appellant's home, and hair samples.

By point of error number two, appellant complains of the admission of his two confessions given to the McAllen police. Appellant contends that the confessions were illegally obtained and that their admission violated appellant's federal and state Constitutional rights. Appellant argues that the complaint for his arrest warrant was insufficient and that, therefore, the warrant for his arrest was invalid, rendering his confessions invalid.[2]

The complaint for appellant's arrest was as follows:

I, *Raul Guerrero,* do solemnly swear that I have good reason to believe, and do believe and charge, that heretofore, on the *10th* day of *February,* A.D. 1987, in the County of Hidalgo and State of Texas, *Rene Villegas AKA Jap,* hereinafter called Defendant, did then and there commit the felony offense of theft by then and there taking jewelry and a 1984 Pontiac Sun Bird, belonging to Carmen Villegas, and while in the course of and furtherance of the commission of theft did then and there commit an act clearly dangerous to human life, to wit: strangulation and beating and did thereby cause the death of said individual, Carmen Villegas.

On 2–10–87 McAllen Police Officers received information from Mission Police Department concerning a homicide that had occurred earlier that day in McAllen. Witnesses were interviewed who stated that suspect, later identified as Rene Villegas, AKA "JAP" had told them he killed an aunt of his in McAllen and

---

**2.** The warrant was issued before the effective date of the statutory "good-faith" exception, Tex. Code.Crim.Proc.Ann. art. 38.23(b) (Vernon Supp.1989).

taken her car. Witnesses led officers to location of vehicle in Hidalgo County where it was found abandoned. Registration on vehicle showed it to be 87–TX 400–FPF, blue, 1984 Pontiac Sunbird registered to Carmen Villegas 504 N. 18th Street McAllen. Upon checking house for welfare concern officers found body of female later identified as Carmen Salinas Villegas 7–23–43 in bathtub apparently beaten and strangled to death. Exact cause of death unknown at this time.

Suspect, Rene Villegas AKA Jap, is described as a 17 year old, white hispanic, male DOB: 04/16/69, 5'9", 160 lbs. brown hair, brown eyes, last address being 3004 Fir, McAllen.

A McAllen police officer, Investigator Raul Guerrero, prepared the complaint for the warrant for appellant's arrest. Guerrero testified that at the time he drafted the complaint for the arrest warrant, without legal advice, he thought that he was alleging a capital murder. The complaint was based on information from various witnesses who provided written and sworn statements regarding their knowledge of appellant's aunt's murder. Guerrero testified that the witnesses' statements were corroborated by locating appellant's aunt's car and by locating her body in her house. The complaint, however, was not specific regarding the reliability and credibility of the witnesses, nor did it name the witnesses.

At the time the judge signed the arrest warrant, he was informed of the specifics facts in support of the complaint and that those facts had been corroborated. The judge was also informed that appellant's aunt's car had been located and was in police custody. He was further informed about the discovery of the body and that it was found at the location and in the condition indicated by the witnesses and that appellant was the suspect in the killing.

Appellant's specific contentions regarding the complaint are that it attempts to use theft as the aggravating elements and that it fails to allege an intentional homicide.

It is well established that a complaint in support of an arrest warrant

need not contain the same particularity required of an indictment. *Janecka v. State,* 739 S.W.2d 813, 822–23 (Tex.Crim.App. 1987). The complaint must state facts sufficient to show the commission of an offense charged. *Vallejo v. State,* 408 S.W.2d 113, 114 (Tex.Crim.App.1966). The information in such a complaint is not required to be the same quantity or quality as the evidence required for a conviction, but need only be sufficient for appellant to ascertain with what he was being charged so that he could properly prepare a defense. *Janecka,* 739 S.W.2d at 823; *Vallejo,* 408 S.W.2d at 114. A complaint for an arrest warrant which, standing alone, is conclusory and does not reflect probable cause is invalid. *Reyes v. State,* 741 S.W.2d 414, 429 (Tex.Crim.App.1987).

The complaint in this case recites the information given by witnesses and the corroboration of that information by the police; witnesses informed the police that appellant claimed to have killed his aunt and stole her car, and the police found the car and the body where witnesses said they would. The complaint was not conclusory, but was supported by facts and did reflect probable cause to arrest appellant for murder. Appellant's second point of error is overruled.

By his fifth point of error, appellant contends that the trial court erred in admitting evidence illegally seized from appellant's residence. Appellant further contends that the admission of this evidence violated his federal and state Constitutional rights.

The evidence in question was seized, without a search warrant, from the house in which appellant's aunt and grandmother lived. The evidence referred to was fingerprints, photographs, blood and hair samples and shoe prints. Testimony established that appellant had stayed at this house six months prior to the killing, but had not stayed at and had not been welcome at this residence since the summer of 1986. Other testimony also established that appellant's last known address was that of his mother's house which was several blocks away

**236**

from his aunt's house. Finally, we note that appellant apparently did not enter his aunt's house as resident by coming in through the door, but instead, came in through a window.

■ In order to have standing to object to evidence seized in the absence of a search warrant, an individual must have an expectation of privacy in the premises or in the thing seized at the time of the search and seizure. *Villarreal v. State,* 708 S.W.2d 845, 849–50 (Tex.Crim.App.1986); *see also United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); *McVea v. State,* 635 S.W.2d 429, 434 (Tex.App.—San Antonio 1982, pet. ref'd). An individual has no standing to complain of an illegal search of another's residence. *Janecka,* 739 S.W.2d at 830. It is appellant's burden to establish that some personal privacy interest of his was violated by the police action. *McVea,* 635 S.W.2d at 434.

The evidence does not establish that appellant had any expectation of privacy in the premises or in the evidence seized. He, therefore, has no standing to complain of the search. Appellant's fifth point of error is overruled.

■ Appellant's thirteenth point of error attacks the admissibility of the contents of State's Exhibit 23; appellant contends that the trial court erred when it admitted the contents of State's Exhibit no. 23, an envelope containing hair samples. These hair samples were subsequently marked as State's Exhibit 23–A. Appellant argues that there was a break in the chain of custody and that the predicate for admission of this exhibit was not laid.

There was some initial confusion regarding the chain of custody regarding Exhibit 23 and there was an attempt to admit the evidence before proper predicate was laid. The predicate for the admission of this exhibit, however, was subsequently laid in a reverse chronological order. Testimony showed that hair samples were sent to the F.B.I. laboratory in a McAllen police department envelope. It was also established that the hair samples were moved from a brown manila envelope to the McAllen po-

lice department envelope. There was also testimony that the hairs were taken from the victim, and placed in the brown envelope. The hairs were introduced through the police officer who sent the hairs to the F.B.I. laboratory.

■ Admission of evidence which can be traced to the possession of the testifying expert is not error. *Hunter v. State,* 468 S.W.2d 96, 100 (Tex.Crim.App.1971). The hairs were traced through an unbroken chain of custody from appellant to the police officer through whom they were introduced. Appellant's thirteenth point of error is overruled.

■ Appellant's last two points of error regarding the admission of evidence concern photographs of appellant's aunt and the murder scene. By one point of error, appellant claims that the trial court erred when it allowed the admission of cumulative and prejudicial photographs. In the other point of error, appellant claims that the trial court erred when it allowed the State to show an inflammatory and prejudicial photograph of appellant's aunt to one of her brothers in front of the jury; appellant objects to the manner in which the photograph was introduced, claiming that it upset the witnesses and inflamed the jury.

At trial, the State introduced over sixty photographs. Appellant objected to twenty of these photographs, most of which were of the murder scene and appellant's aunt. There were photographs of the bloody bathroom floor and of bloody clothing. Some of the photographs showed appellant's aunt partially clothed in the bathtub. Others were closeups of her various wounds, including closeups of the stab wounds in her vagina and the extensive bruising on her face. Some of these photographs were taken during the autopsy. A photograph of appellant's aunt at the funeral home, after the autopsy, was shown to and introduced through appellant's uncle and was done so for identification purposes. Contrary to appellant's assertions, this was done at a time when the uncle was already in tears.

Testimony concerning the scene of a murder, including a description of the body, is admissible to throw light on the transaction and reveal its general nature; if a verbal description of the scene is admissible, then a photograph depicting the same is admissible. *Burdine v. State*, 719 S.W.2d 309, 316 (Tex.Crim.App.1986), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1986); *Hawkins v. State*, 660 S.W.2d 65, 79 (Tex.Crim.App.1983); *Reimer v. State*, 657 S.W.2d 894, 896 (Tex.App.—Corpus Christi 1983, no pet.). The admission in evidence of photographs is within the discretion of the trial court, which determines whether they serve a proper purpose in the enlightenment of the jury. *Burdine*, 719 S.W.2d at 316. When photographs are cumulative of other evidence, they are admissible except if they are offered solely to inflame the jury, or if their prejudicial effect outweighs their probative value.

A relevant photograph is not rendered inadmissible merely because it is gruesome or might tend to arouse the jury's passions. *Martin v. State*, 475 S.W.2d 265, 267 (Tex.Crim.App.1972); *Guzman v. State*, 649 S.W.2d 77, 80 (Tex.App.—Corpus Christi 1982, no pet.) Gruesome photographs of a murder victim are admissible for identification purposes. *Jackson v. State*, 745 S.W.2d 4, 18 (Tex.Crim.App. 1988), *cert. denied*, 487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 947 (1988). In capital murder cases, detailed photographs, some of which are enlargements and closeups, which depict a bloody, mutilated, partially clothed body are relevant to the cause of death and are probative evidence of the killer's culpable mental state. *Reimer*, 657 S.W.2d at 898; *see also Montelongo v. State*, 644 S.W.2d 710, 713–14 (Tex.Crim. App.1980).

Similarly, photographs which show a bloody crime scene are also admissible. *Wilkerson v. State*, 726 S.W.2d 542, 547 (Tex.Crim.App.1986); *see also Hill v. State*, 647 S.W.2d 306, 309 (Tex.App.—Corpus Christi 1982, pet. ref'd). Postautopsy photographs are admissible where they are used to illustrate and clarify a medical expert's description of the injuries, and reveal the cause of death. *Izaguirre v. State*, 695 S.W.2d 224, 226 (Tex.App.—Corpus Christi 1985, no pet.); *see also Terry v. State*, 491 S.W.2d 161 (Tex.Crim.App.1973).

Because the photographs were relevant and we do not find that their prejudicial or inflammatory effect outweighed their probative value, or that they were offered solely to inflame the jury, we find the trial court did not abuse his discretion in admitting them. Appellant's points of error numbers eight and nine are overruled.

## JURY CHARGE

Appellant raises two points of error regarding the jury charge. By point of error number three, appellant contends that the trial court committed reversible error when it failed to narrowly define intentionally in the charge, as requested by appellant. By point of error number four, appellant claims that the trial court erred when it refused to negate voluntary manslaughter in the charge, as requested by appellant.

At trial, appellant objected to the use of the full statutory definition of "intentionally" in conjunction with a charge on capital murder. At trial, and on appeal, appellant contends that his crime was homicide and that such a crime is a result oriented crime and not a "nature of the conduct" crime. He claims that the statutory definition of intentionally should have been limited such that the jury would have only considered the culpable mental state of the crime alleged.

Capital murder is a "result of conduct" crime. The offender must intend to kill. The abstract definition did not limit the definition of intentional to the result of the act. The definition alone does not end our inquiry because the definition of a term must be examined in the context in which the defined term appears. *Kinnamon v. State*, No. 69,531, 791 S.W.2d 84 (Tex.Crim. App.1990); *Selvage v. State*, 680 S.W.2d 17 (Tex.Crim.App.1984).

We note first that the abstract definition was preceded by an abstract instruction on murder which required an intentional or

knowing causing of the death of an individual. This definition was immediately followed by a definition instructing the jury that a person commits capital murder when such person *intentionally* commits the offense of murder in the course of committing or attempting to commit the offense of aggravated sexual assault.

Secondly, and more importantly, the jury was later instructed that they could not convict the appellant unless they found beyond a reasonable doubt that appellant "specifically intended to kill" Maria Del Carmen Villegas. Thereafter, in the application portion, the charge required a finding of the intentional causing of the death of the victim in order to convict the appellant of capital murder.

Viewing the complained of definition in the context in which the term appears, it is clear that the charge and more particularly the application paragraphs properly restricted the definition of intentional to its factual context; that is that the appellant intentionally caused the death of Maria Del Carmen Villegas. The appellant was convicted of capital murder not because he "engaged in the conduct" of committing an aggravated sexual assault on the victim but because the jury found that his objective was to cause the death of the victim in the course of committing or attempting to commit the offense of aggravated sexual assault. The complained of portion did not provide any additional degree of culpability. See *Kinnamon, supra,* at p. 88. Appellant's third point of error is overruled.

 Appellant's fourth point of error is that the trial court committed reversible error when it refused to negate voluntary manslaughter in its charge, as appellant requested. Appellant specifically complains that the paragraphs on capital murder and murder should have included or negated voluntary manslaughter. He claims that his main defense was voluntary manslaughter and that the State should have been required to prove the absence of an influence of sudden passion beyond a reasonable doubt in order to establish murder and that the jury should have been

informed of this in the charge. The only section of the charge which addressed sudden passion was the section on voluntary manslaughter which was added at the appellant's request.

 If the evidence raises the issue of sudden passion, then the State must disprove the existence of sudden passion beyond a reasonable doubt. *Lawrence v. State,* 700 S.W.2d 208, 210 (Tex.Crim.App. 1985); *Bradley v. State,* 688 S.W.2d 847, 851 (Tex.Crim.App.1985). Should the evidence raise "sudden passion," the absence thereof would constitute a "fact" which is engrafted upon the elements of capital murder and its negation becomes an implied element of capital murder which must be established beyond a reasonable doubt. *Bradley,* 688 S.W.2d at 851. Similarly, the court would be bound to submit an issue on voluntary manslaughter if the evidence fairly raised it and if the defendant requested it. *Bravo v. State,* 627 S.W.2d 152, 157 (Tex.Crim.App.1982).

 If the evidence does not raise the issue of sudden passion from an adequate cause, then an issue on voluntary manslaughter should not be given. *See Marras v. State,* 741 S.W.2d 395, 405–06 (Tex. Crim.App.1987); *Lincecum v. State,* 736 S.W.2d 673, 678–79 (Tex.Crim.App.1987), *cert. denied,* 486 U.S. 1061, 108 S.Ct. 2835, 100 L.Ed.2d 936 (1987). It follows that, if voluntary manslaughter is not raised by the evidence such that an issue on it is not warranted, then it is also not raised as an implied element of murder and it should not be included or negated in the section in the cause pertaining to murder. *See Lincecum,* 736 S.W.2d at 682. In other words, where the defendant is not entitled to a jury instruction on voluntary manslaughter, the State is not required to disprove the existence of sudden passion in a capital murder trial. *Id.*

 We note that the charge in this case is inconsistent in that it contains an instruction of voluntary manslaughter, but does not contain the implied elements of negation of sudden passion in the instructions on capital murder and murder. We

must examine the record to determine whether the evidence is sufficient to raise the issue of voluntary manslaughter or the inclusion of an implied element of negation of sudden passion in the instructions on murder and capital murder in the charge. *See Gold v. State,* 736 S.W.2d 685, 688 (Tex.Crim.App.1987). If the evidence is insufficient to raise the issue of sudden passion as a result of adequate cause, then the trial judge should not have included the instruction regarding voluntary manslaughter in the charge. *See Oliva v. State,* 663 S.W.2d 656 at 658 (Tex.App. 1983).

"Sudden passion" means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation. Tex.Penal Code Ann. § 19.04(b) (Vernon 1989). "Adequate cause" means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection. Tex.Penal Code Ann. § 19.04(c) (Vernon 1989).

Appellant contends that his main defense was that he was guilty of voluntary manslaughter and not murder or capital murder. In support of his position that sudden passion arose from adequate cause, appellant refers us to portions of his jury argument in which he relies on his confessions and statements to his friends in which he discussed a "confrontation" with his aunt. He also refers to a panicking which comes over him during the episode in his aunt's house. Appellant claims that the evidence of the so-called confrontation, an argument, and a fight are sufficient to support an issue on voluntary manslaughter. We disagree.

The confessions to which appellant refers indicate that appellant came in through a window and that his aunt disapproved of him for coming in that way. Appellant apologized to his aunt, and immediately thereafter "something came over him" and he began beating his aunt with his fists. After she passed out, he began to drag her to the bathroom, at which time she became conscious and grabbed appellant in the face. He claims that this made him panic and that he grabbed the butter knife and began stabbing her.

When a defendant first attacks another, he cannot claim that the other's acts of self-defense gave rise to adequate cause so that he was justified in killing her, even if he was acting under sudden passion after the victim's acts of self-defense. *Lincecum,* 736 S.W.2d at 679. Appellant instigated the confrontation with his aunt by coming in the window of her house, in essence attacking her. She reacted with disapproval. Appellant then physically beat her and she fought back. Angry words directed towards an unwelcome visitor who enters through a window, and the victim's self-defensive act of grabbing her attacker in the face after an attack, do not constitute evidence of adequate cause for sudden passion. Hence, the trial court did not err in denying appellant's request that sudden passion be negated in the murder and capital murder sections of the charge.

The trial court, however, did err in that it should not have included the instruction regarding voluntary manslaughter in the charge. This error is not reversible, however, because appellant was convicted of the greater offense of capital murder. *Clark v. State,* 717 S.W.2d 910, 918 (Tex. Crim.App.1986), *cert. denied,* 481 U.S. 1059, 107 S.Ct. 2202, 95 L.Ed.2d 857 (1986); *Williams v. State,* 668 S.W.2d 692, 700–01 (Tex.Crim.App.1983). Appellant's fourth point of error is overruled.

### JURY ARGUMENT

In his final point of error concerning the guilt phase of his trial, appellant claims that the trial court erred when it allowed the prosecutor to continue with improper jury argument over his objection. Appellant claims that the State overstepped the bounds of a proper argument for law enforcement when it made the following comment: "You will decide what is acceptable, what is tolerable in this county. You will decide if it is all right for a man to brutally rape, rob and steal from a single

woman who is without protection." A statement to the jury that they are going to be the ones to decide what will be tolerated in the county is tantamount to telling them that they are going to be the voice of the community, and is proper jury argument. *See Hicks v. State*, 545 S.W.2d 805, 810 (Tex.Crim.App.1977). The argument was within the bounds of proper jury argument; accordingly, appellant's eleventh point of error is overruled.

## IV. PUNISHMENT PHASE

Appellant complains of error in the punishment phase of his trial by two points of error. By his first point, appellant complains that the trial court erred in admitting certain testimony from lay witnesses. By his next point of error, appellant challenges a comment in the State's jury argument.

## ADMISSION OF EVIDENCE

■ Appellant contends that the trial court committed reversible error when it allowed the State to introduce opinion testimony from lay witnesses concerning the future dangerousness of appellant. Appellant argues that Tex.Rule Crim.Evid. 701 is unclear regarding the limits placed on the admissibility of lay testimony. In support of this argument, appellant claims that the American Psychiatric Association is opposed to the use of psychiatric testimony to establish future dangerousness in a capital murder case. *Barefoot v. Estelle*, 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983).

■ In Texas, a properly qualified lay witness, one who knows the defendant and has known him for a while, can state an opinion concerning the probability of future dangerousness of a capital murder defendant. *Fierro v. State*, 706 S.W.2d 310, 317 (Tex.Crim.App.1986); *Russell v. State*, 665 S.W.2d 771, 777–78 (Tex.Crim. App.1983) *cert. denied*, 465 U.S. 1073, 104 S.Ct. 1428 (1984). In this case, each of the witnesses testified regarding the length of time each had known appellant and the relationship of each with the appellant before voicing an opinion regarding appellant's future dangerousness. We find that each witness was properly allowed to express an opinion of future dangerousness. Moreover, there can be no harm since the future dangerousness issue was not answered by the jury. Appellant's twelfth point of error is overruled.

## JURY ARGUMENT

■ Appellant raises one point of error regarding the State's jury argument at punishment. In this instance, the State referred to appellant's failure to show remorse.

The State's comment regarding appellant was "[y]ou've learned that he feels no remorse." Appellant objected, claiming that the State had gone into mental states which only could have been elicited by appellant testifying and that, therefore, the State was commenting on appellant's failure to testify. The State countered that witnesses had testified during the guilt phase of trial that appellant had shown no remorse. The court overruled appellant's objection and instructed the jury that no inferences were to be drawn from appellant's silence. A bench conference was held, after which the court instructed the jury to disregard the State's comment regarding remorse. Appellant moved for a mistrial, contending that the instruction was insufficient to cure any taint occurring from the State's comment. The trial judge denied the motion for mistrial and appellant appeals this denial, claiming that the trial court erred in denying his motion for mistrial.

Where a prosecutor comments during jury argument in the punishment phase of trial on a defendant's failure to show remorse, an instruction by the trial court to the jury to disregard is sufficient to cure any error which may have occurred. *Bower v. State*, 769 S.W.2d 887, 907 (Tex.Crim. App.1989); *Hawkins v. State*, 660 S.W.2d 65, 79–80 (Tex.Crim.App.1983). Appellant's tenth point of error is overruled.

The judgment of the trial court is affirmed.