Robert SALAZAR, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–01–00308–CR.

Court of Appeals of Texas,
San Antonio.

July 10, 2002.

From the 175th Judicial District Court, Bexar County, Texas, Trial Court No. 2000–CR–1217; Mary Roman, Judge Presiding.[1]

Suzanne M. Kramer, San Antonio, for appellant.

Edward F. Shaughnessy, III, Assistant Criminal District Attorney, San Antonio, for appellee.

Sitting: CATHERINE STONE, Justice, PAUL W. GREEN, Justice, SANDEE BRYAN MARION, Justice.

Opinion by SANDEE BRYAN MARION, Justice.

A jury found defendant, Robert Salazar, guilty of murder in the stabbing death of Homero Don Juan, and assessed punishment at life in prison. Defendant does not challenge the sufficiency of the evidence; instead, he complains that the trial court abused its discretion in refusing to submit a jury charge on a lesser-included offense, in admitting into evidence testimony about an extraneous offense, and in denying his motion for mistrial following improper jury argument by the prosecutor. Finding no abuse of discretion, we affirm the trial court's judgment.

## BACKGROUND

On the night of the stabbing, defendant's girlfriend, Carmen Salazar,[2] was working at a bar in San Antonio. The victim,

---

1. The Honorable Henry Schuble presided at trial.

2. By the date of trial the defendant and Carmen were married.

Homero Don Juan, and a friend, George Velasquez, had been at the bar earlier in the evening, and they were waiting in the parking lot for Carmen to come out of the bar when it closed. Defendant and a friend, Robert Alejos, Jr., drove to the bar to meet Carmen. When the defendant and Alejos arrived, they saw Velasquez talking to Carmen in the parking lot. The defendant got out of his car, approached Velasquez, and the two began to argue. Juan got out of his car, and joined the argument. Eventually, everyone left the bar's parking lot in separate cars.

Carmen left the club with another woman, with the intention of taking the woman to her house and then meeting the defendant. The defendant and Alejos followed Carmen in the defendant's car. Carmen and Alejos testified that, as they were driving toward the other woman's house, Velasquez and Juan drove up next to the defendant's car and hit the car's window with a metal object. At some point, Juan lost control of his car and it came to a stop in the road. The defendant then stopped his car. Alejos said that Velasquez got out of Juan's car, ran to the defendant's car, pulled defendant out of the car, and the two began to fight, with Juan joining the fight. Alejos said the defendant "knocked out" both Velasquez and Juan, and he did not see a knife.

Velasquez testified that when Juan's car came to a stop, he jumped out of the car and started to run away because he was afraid. He said the defendant caught up with him, and stabbed him eleven times. Velasquez said he grabbed a pair of pliers before he got out of Juan's car, but he did not remember trying to hit the defendant with the pliers, although he admitted that he could have done so. The last thing Velasquez saw was the defendant walking toward Juan's car, where Juan was standing. Velasquez managed to walk back to Juan's car, where he sat down in the passenger seat.

Brendyn Beyer heard the sound of a car crash from his apartment. When he looked out the window, he saw the defendant chase Velasquez, and the two begin to fight. He saw the defendant walk back to Juan, and the two start to fight by Juan's car.

There was no dispute that the defendant stabbed Juan twice, severing his jugular vein. Juan died before medical help arrived at the scene. The police found a pair of pliers on the ground outside the passenger door of Juan's car, and another set of bloodied pliers on the driver-side floorboard. A crime scene technician said there was a great deal of blood around the car, and the pliers on the floorboard could have been sitting in a pool of blood.

## LESSER–INCLUDED OFFENSE INSTRUCTION

The jury was charged on the offense of murder and on self-defense. Defendant asserts he was entitled to a charge on the lesser-included offense of aggravated assault because the evidence establishes that he had a less culpable mental state than that required for the offense of murder. Defendant contends the evidence shows that, while attempting to defend himself, his mental state only was to harm Juan; therefore, the record contains evidence that if he is guilty, he is guilty only of the offense of aggravated assault.

█ Whether a charge on a lesser-included offense is required is determined by a two-pronged test: first, we must determine whether the offense constitutes a lesser-included offense, and second, there was evidence that, if guilty of an offense, defendant was guilty only of the lesser-included offense. *Schweinle v. State,* 915 S.W.2d 17, 18 (Tex.Crim.App.1996); *Rous-*

*seau v. State,* 855 S.W.2d 666, 672 (Tex. Crim.App.1993). As long as evidence from any source raises an issue that a lesser-included offense may have been committed, and a jury charge is properly requested, the issue must be submitted to the jury. *Thomas v. State,* 699 S.W.2d 845, 849 (Tex.Crim.App.1985). The credibility of the evidence and whether it is disputed or conflicts with other evidence may not be considered in determining whether such a charge should be given. *Id.* However, the evidence must establish the lesser-included offense as a valid, rational alternative to the charged offense. *Wesbrook v. State,* 29 S.W.3d 103, 113 (Tex.Crim.App.2000). This is so because the second prong of the test preserves the integrity of the jury as the factfinder by ensuring that the jury is instructed on a lesser-included offense only when that offense constitutes a·valid, rational alternative to the charged offense. *Arevalo v. State,* 943 S.W.2d 887, 889 (Tex. Crim.App.1997). If a jury were instructed on a lesser-included offense not raised by the evidence, then the instruction "would constitute an invitation to the jury to return a compromise or otherwise unwarranted verdict." *Id.*

Here, the State concedes, and we agree, that aggravated assault is a lesser-included offense of murder. *Cardenas v. State,* 30 S.W.3d 384, 392 (Tex.Crim.App.2000). The second prong of the test can be satisfied if there is some evidence that would allow a rational jury to find that if the defendant is guilty, he is guilty only of aggravated assault. *Schweinle,* 915 S.W.2d at 17; *Bergeron v. State,* 981 S.W.2d 748, 750 (Tex.App.-Houston [1st Dist.] 1998, pet. ref'd). A person commits an aggravated assault if he intentionally, knowingly or recklessly causes serious bodily injury to another. Tex. Penal Code Ann. §§ 22.01(a)(1), 22.02(a)(1) (Vernon

1994). A person can also commit an aggravated assault if he intentionally, knowingly, or recklessly causes bodily injury to another while using a deadly weapon. *Id.* §§ 22.01(a)(1), 22.02(a)(2). "Serious bodily injury" is defined as any injury that "creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46).

▮▮▮ A jury charge on the lesser offense is not always required merely because proof of a lesser offense is included within the proof of the greater offense. *Creel v. State,* 754 S.W.2d 205, 210 (Tex. Crim.App.1988). Here, the evidence shows that defendant intentionally caused serious bodily injury and committed an act clearly dangerous to human life that caused Juan's death. A person commits murder if he intentionally or knowingly causes another's death or "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." Tex. Penal Code Ann. § 19.02(b)(1), (2).[3] Therefore, there was no evidence that if defendant was guilty, he was guilty only of aggravated assault. *See Forest v. State,* 989 S.W.2d 365, 367–68 (Tex.Crim.App. 1999); *Harrell v. State,* 659 S.W.2d 825, 827 (Tex.Crim.App.1983); *see also Jackson v. State,* 992 S.W.2d 469, 475 (Tex.Crim. App.1999) (not entitled to instruction on the lesser-included offense of aggravated assault when evidence showed appellant, at least, guilty of homicide). Thus, the trial court did not err in refusing an instruction on aggravated assault.

## EXTRANEOUS OFFENSE

Defendant asserts the trial court erred in submitting to the jury, during the pun-

---

**3.** Here, the jury was charged on the offense of murder under sections 19.01(b)(1) and (b)(2).

ishment phase, an uncharged extraneous offense regarding the sale of cocaine.

The State may offer evidence of extraneous crimes or bad acts proven beyond a reasonable doubt during the punishment phase. Tex.Code Crim. Proc. Ann. art. 37.07, § 3(a) (Vernon Supp.2001). Defendant complains that the evidence was insufficient to support submission of the offense because there were no "affirmative links" demonstrating he possessed the drugs. Although defendant was not in the house searched by the police when the drugs were found, Becky Gonzales testified that the drugs belonged to defendant and he derived his income from the sale of the drugs. On appeal, defendant appears to argue that because Gonzales was charged with a crime in connection with the drugs, she is an accomplice witness whose testimony must be corroborated, and because there was no corroborating evidence, her testimony alone is insufficient to prove the extraneous offense beyond a reasonable doubt and there were no other "affirmative links" demonstrating that defendant possessed the drugs.

▪ Defendant relies on Texas Code of Criminal Procedure article 38.14, which states that a conviction may not be based upon an accomplice's testimony unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed. Tex.Code Crim. Proc. Ann. art. 38.14 (Vernon 1979). Article 38.14 has no application to evidence of extraneous offenses offered in the punishment phase. See Jones v. State, 982 S.W.2d 386, 395 (Tex.Crim.App.1998); Goodman v. State, 8 S.W.3d 362, 365 (Tex. App.-Austin 1999, no pet.). Accordingly, the accomplice witness rule poses no bar to the jury's ability to find beyond a reasonable doubt that defendant owned the drugs that were the subject of the uncharged extraneous offense, and the trial court did not abuse its discretion in allowing testimony about the offense into evidence.

### JURY ARGUMENT

Defendant asserts the trial court erred in denying his motion for mistrial based upon improper closing argument during the guilt-innocence phase. Defendant complains of the following remarks by the prosecutor:

> We're a community. I talked about in voir dire that you all have something in common. You all live here. You all live in Bexar County. You work here, you put your head on a pillow here each night. This is serious. There is a violent person sitting right here at the end of this table that is capable of being maybe minutes short of a capital murder case. Killing . . . .

Defense counsel objected as follows: "Your Honor, I'm going to object as to that." Defense counsel also moved for a mistrial. Although defense counsel did not state specific grounds for his objection, the trial court sustained the objection and stated "Disregard it. Let's move along." The court then denied the motion for mistrial. On appeal, defendant complains that the mistrial should have been granted because the prosecutor's mention of "a capital murder case" prejudiced the jury.

▪ The four areas of permissible prosecutorial argument are a summation of the evidence, reasonable deduction from the evidence, answer to opposing counsel's argument, and plea for law enforcement. Richardson v. State, 879 S.W.2d 874, 881 (Tex.Crim.App.1993). Even when an argument exceeds the permissible bounds of these areas, the error is not reversible unless, in light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute, or injects new facts harmful to the defendant

into the trial proceeding. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex.Crim.App. 2000). The prosecutor's remarks must have been a willful and calculated effort to deprive the defendant of a fair and impartial trial. *Id.* Generally, an instruction to disregard will cure the error. *Id.*

Here, the prosecutor's comment was quickly followed by an instruction to disregard, which we presume was complied with by the jury. Only offensive or flagrant error warrants reversal when there has been an instruction to disregard, and, here, this comment was not so flagrant that the instruction to disregard was ineffective. *Id.* Thus, the trial court did not abuse its discretion in denying defendant's motion for a mistrial.

## CONCLUSION

We overrule defendant's issues on appeal, and affirm the trial court's judgment.