COURT OF 
APPEALS
                                                 
SECOND DISTRICT OF TEXAS
                                                                 
FORT WORTH
 
 
                                        
NO. 2-02-376-CR
 
 
PATRICK 
AARON KENNEDY                                                  
APPELLANT
 
                                                   
V.
 
THE 
STATE OF TEXAS                                                                
STATE
 
                                              
------------
 
        FROM 
CRIMINAL DISTRICT COURT NO. 1 OF TARRANT 
COUNTY
 
                                              
------------
 
                        
OPINION ON 
REHEARING EN BANC
 
                                              
------------
On 
August 24, 2005, this court granted Appellant Patrick Aaron Kennedy=s 
motion for en banc reconsideration and ordered this case resubmitted en 
banc.  On December 16, 2005, we 
withdrew the majority opinion, dissenting opinion, and judgment of February 3, 
2005.  We substitute the following 
in their place.

A 
jury convicted Appellant of murder and assessed his punishment at twenty-seven 
years= 
confinement in the Institutional Division of the Texas Department of Criminal 
Justice.  The trial court sentenced 
him accordingly.  Appellant brings 
nine points on appeal, arguing evidentiary errors, charge error, and improper 
jury argument.  Because we hold that 
the trial court did not reversibly err, we affirm the trial court=s 
judgment.
I.  FACTUAL AND PROCEDURAL 
BACKGROUND
On 
the afternoon of November 5, 2001, Ginny Ward stood outside Enterprise 
Rent-A-Car and observed Brandy Upchurch and Corey McMillan, the complainant, 
arguing in the adjoining parking lot of the Budget Inn.  Ward testified that the 
complainant yelled at and shoved Upchurch; then Upchurch walked away from the 
motel.  The complainant then began 
removing items from his first-floor motel room and loading them into his car, 
located directly outside.

About 
twenty minutes later, Ward watched a grey Mustang, driven by Matthew Schiffert, 
Appellant=s 
uncle, and containing Appellant and Upchurch, drive slowly into the parking lot 
Alike 
they were looking for somebody.@  Near the exit, Schiffert revved the car 
motor, drove back around the lot, hit a parked rental truck, and stopped five or 
six inches behind the complainant=s 
car.  Ward watched Appellant get out 
of the Mustang=s 
front passenger seat and run up to the complainant, who stood up from the 
backseat of his car.  According to 
Ward, the complainant was not holding anything and did nothing physical or 
aggressive toward Appellant.  
Appellant slashed at the complainant, causing him to back up.  Appellant then returned to the Mustang, 
which sped off, but not before an Enterprise Rental Car employee wrote down its 
license plate number.  The 
complainant then went to the front of his car while holding his neck and 
hollered for somebody to help him.  
Ward testified that her husband helped the complainant to the ground and 
put his hands on the complainant=s 
throat to try to stop the bleeding.  
The complainant died from two stab wounds, one in the left side of his 
neck and the other in the left side of his chest.
Police 
officers identified Schiffert as the owner of the Mustang, and Ward later 
picked Appellant out of a photo lineup.  
At trial, the trial court submitted the issue of self-defense to the 
jury.
II.  EVIDENCE AT THE GUILT/INNOCENCE 
PHASE
A. 
Weapons Found in The Complainant=s 
Room 


In 
his fifth point, Appellant complains that the trial court erred by limiting 
defense counsel=s 
questioning of a witness concerning weapons found in the complainant=s 
room on the day he was killed and by excluding four photographs, 
defendant=s 
exhibits 12-15.  Defense exhibit 12 
shows a knife on the floor of the complainant=s 
room.  Defense exhibit 13 shows a 
club on the table inside his room.  
Defense exhibit 14 shows the motel room=s 
kitchenette.  Finally, defense 
exhibit 15 shows a large picture of the room from the door and was offered to 
give the jury a perspective of the other exhibits.  At trial, the defense sought to admit 
these exhibits three times:  twice 
during the cross-examination of Detective Kevin Brown and again during 
Appellant=s 
case-in-chief.  In response to the 
first attempt, the State objected that the evidence was irrelevant because the 
crime occurred outside the motel and there was no evidence that anyone was near 
the room.  Defense counsel replied 
that the photos were relevant because Ward testified that the complainant had 
been going in and out of the room while loading items in his car, and because 
they showed what had been going on inside the room moments before and possibly 
after the stabbing.  The trial court 
reviewed the photos and sustained the State=s 
objection.

Later, 
after establishing that the complainant=s 
door was wide open and a large pool of blood was found right in front of the 
door, defense counsel asked Detective Brown whether a person could have thrown a 
knife or other weapon inside the door of the complainant=s 
room.  The trial court sustained the 
State=s 
speculation and relevance objections, but admitted the exhibits for purposes of 
the record.  The record does not 
reflect what Detective Brown=s 
response would have been had the questioning been allowed.  Defense counsel attempted to introduce 
the exhibits again during its case-in-chief, and the State renewed its relevancy 
objection, which the trial court sustained.
By 
failing to make an offer of proof or file a bill, Appellant failed to preserve 
his complaint regarding the exclusion of Detective Brown=s 
testimony.[1]  In regard to the photographs, Appellant 
now argues that they were relevant to show that he acted in self-defense, to 
show the complainant=s 
alleged violent character, and to show that the complainant was the first 
aggressor.  Appellant failed, 
however, to offer these arguments to the trial court.  Therefore, he has also failed to 
preserve his complaints regarding the photographs.[2]  Accordingly, we overrule 
Appellant=s 
fifth point. 
B.  Appellant=s 
Vision

In 
his eighth point, Appellant complains that the trial court erred by limiting 
questions regarding his vision and by preventing his trial counsel from making a 
bill when timely requested.  At 
trial, Appellant testified that he had Aone 
good eye and one real weak eye.@  When defense counsel asked Appellant 
about the extent of the weakness, the State objected on relevancy grounds, and 
the trial court sustained the State=s 
objection.  Later, after both sides 
had rested but before the court=s 
charge was read to the jury, defense counsel asked to proffer evidence regarding 
what Appellant=s 
answers would have been to questions about his vision.  The trial court denied the request, 
stating, AYou=re 
making a request for a bill, and I=m 
not going to grant it at this time  
. . . .  You can file it by 
way of a bill later, if you wish to.@  The original record did not contain such 
a bill.  Therefore, pursuant to 
Spence v. State,[3] 
we abated this appeal to the trial court for a hearing so that Appellant could 
properly perfect the record.

At 
the abatement hearing, the only evidence that Appellant offered was that he is 
legally blind in his left eye and has to wear a corrective lense to see with his 
right eye.  Although we allowed 
supplemental briefing, Appellant failed to file a supplemental brief regarding 
the evidence presented at the abatement hearing, leaving us with only his 
contention in his original brief that A[b]ecause 
this is a situation where the [t]rial [c]ourt may have found the evidence to be 
admissible if the [c]ourt would have heard it, and the jury charge had not yet 
been read, this case should be reversed and remanded for a new 
trial.@  Because Appellant has not filed a 
supplemental brief explaining why the evidence about his vision warrants a new 
trial, he has received all the relief required by Spence.[4] 
 Accordingly,  we overrule Appellant=s 
eighth point.
III.  JURY INSTRUCTIONS 
A.  Lesser-Included Offense of 
Manslaughter

In 
his first point, Appellant contends that the trial court erred by failing to 
instruct the jury on the lesser-included offense of manslaughter.  The State acknowledges that manslaughter 
is a lesser-included offense of murder.[5]  Therefore, this issue turns on whether 
there is some evidence that would permit a rational jury to find that the 
defendant is guilty only of the lesser offense and not of the greater.[6]  A person commits manslaughter if he 
recklessly causes the death of an individual.[7]  A person acts recklessly when he is 
aware of but consciously disregards a substantial and unjustifiable risk that 
the circumstances exist or the result will occur.[8]  Therefore, for a defendant to be 
entitled to a jury charge on manslaughter, the record must contain some evidence 
that the defendant did not intend to kill and that the defendant acted 
recklessly while ignoring a known risk.[9]
Appellant 
was charged with and convicted of committing murder by intentionally causing 
serious bodily injury to the complainant, specifically, by stabbing him with a 
knife, which resulted in his death.  
According to Appellant, he was afraid that the complainant was trying to 
hurt Schiffert and Upchurch after the complainant allegedly ran toward 
Schiffert=s 
car.  Appellant testified that he 
exited the car with a knife, immediately showed the knife to the complainant, 
and told the complainant to go inside his motel room in an attempt to scare him 
off.  According to Appellant, the 
complainant then grabbed him by the neck, and Appellant was unable to free 
himself, so he stabbed the complainant in the neck.  Appellant then tried to pull back, but 
the complainant allegedly grabbed him with his other hand, and Appellant stabbed 
him again in the chest.  Appellant 
stated that he never intended to cause death or serious bodily injury to the 
complainant.  However, he also 
testified that he stabbed the complainant because he knew that the complainant 
was trying to hurt him and he wanted the complainant to let him go, and he 
admitted that he stabbed the complainant in highly vulnerable parts of the 
body.

Appellant=s 
statement that he did not intend to kill the complainant must be examined in 
context.[10]  Viewed in the context of the entire 
record, Appellant=s 
testimony that he did not intend to kill the complainant refers to his intent 
when he originally pulled out the knife.  
Indeed, his intent was to scare off the complainant.  But, instead of running away, the 
complainant, according to Appellant, grabbed Appellant around the neck.  In fear for his life, Appellant stabbed 
the complainant in the neck.  But, 
Appellant testified, the neck injury had no effect on the complainant, who then 
grabbed Appellant again, harder.  
This time, Appellant could not move, and the complainant seemed intent on 
really hurting Appellant.  Out of 
fear, Appellant intentionally stabbed the complainant harder, but, again, 
without intent to kill him.  
Appellant testified as follows:
Q.     But when he came at you 
and grabbed you by the neck?
 
A.     I knew he was trying to 
hurt me then.  He tried 
toChe 
just grabbed me real hard and I couldn=t 
move away and I tried to but.  And 
then that=s 
why I cut him.  I didn=t 
want to cut him; I just did. 
 
. . 
. .
 
Q.     Why did you stab 
him?
 
A.     I didn=t 
want to stab him.
 

Q.     Why did 
you?
 
A.     Why did I stab 
him?  Because he grabbed me and I 
couldn=t 
pull away from him.  I 
feltCI 
tried to pull away but I couldn=t 
pull away.  I thought he was going 
to break my neck.  I 
justCI 
just reacted.  I didn=t 
want to.
 
Q.     But you had 
to?
 
A.     
Yes.
This 
exchange, in context, describes self-defense, not manslaughter.  Consequently, Appellant=s 
testimony does not amount to evidence upon which a jury could rationally find 
that he only acted recklessly with respect to killing the complainant.[11]  We hold that the trial court did not err 
by denying Appellant=s 
request for a manslaughter jury charge.  
Accordingly, we overrule Appellant=s 
first point.
B.  Defense of Third 
Persons

In 
his second point, Appellant contends that the trial court erred by failing to 
instruct the jury on the defense of third persons.  A defendant is entitled to an 
instruction on every defensive issue raised by the evidence regardless of the 
strength of the evidence.[12]  A 
person is justified in using deadly force to protect another A[s]o 
long as the accused reasonably believes that the third person would be justified 
in using deadly force to protect himself.@[13] 
 Moreover, the actor must reasonably 
believe that his intervention is immediately necessary to protect the third 
person.[14]
Here, 
there is no evidence that 
Appellant reasonably believed that his use of deadly force was immediately 
necessary to protect Schiffert and Upchurch.  On the contrary, Appellant admitted that 
neither Schiffert nor Upchurch was in immediate danger when he got out of the 
car with the knife.  He 
testified,
Q.     Were youCdid 
you think he might do something to Brandy or your uncle?
 
A.     I thought since he was 
running out, I just knew he was trying to do something to any of 
us.
 
Q.     But when he came at you 
and grabbed you by the neck?
 
A.     I knew he was trying to 
hurt me then.
 

Appellant 
admitted that the complainant appeared to be unarmed and that he never saw the 
complainant holding any type of weapon.  
Appellant also testified that he stabbed the complainant because the 
complainant was trying to hurt him.  
This evidence supports the trial court=s 
decision to submit the issue of self-defense to the jury but does not support 
Appellant=s 
claim of defense of third persons.  
The trial court, therefore, did not err by denying Appellant=s 
request for a jury charge on the defense of third persons.  We overrule Appellant=s 
second point.
C.  Sudden 
Passion

In 
his third point, Appellant contends that the trial court erred by refusing to 
give a sudden passion instruction at punishment.  If a defendant is convicted of murder, 
he may argue that he caused the death while under the immediate influence of 
sudden passion arising from an adequate cause, as Appellant did in this case.[15]  If the defendant establishes sudden 
passion and adequate cause by a preponderance of the evidence, the offense level 
is reduced from first degree to second degree, and the ensuing punishment range 
is reduced.[16]  Sudden passion is defined as a passion 
directly caused by and arising out of provocation by the individual killed, 
which arises at the time of the offense and is not solely the result of former 
provocation.[17]  Adequate cause means cause that would 
produce a degree of anger, rage, resentment, or terror in a person of ordinary 
temper sufficient to render the mind incapable of cool reflection.[18]  Therefore, a sudden 
passion charge should have been given if some evidence shows that 
Appellant=s 
mental state rose beyond a bare claim of fear to render him incapable of 
rational thought and collected action.[19]

According 
to Appellant, the complainant ran outside toward Schiffert=s 
side of the car after Schiffert called and confronted the complainant on the 
phone while parked directly outside his motel room.  Although Appellant testified that he was 
not aware that the complainant possessed a weapon and there is no evidence that 
the complainant said anything as he approached, Appellant decided to grab a 
knife that he remembered leaving in the glove compartment, exit the car, 
immediately brandish the weapon, and move toward the complainant while ordering 
him back into the motel room, in essence attacking him.[20]  According to Appellant, the complainant 
reacted by grabbing Appellant=s 
neck, and Appellant stabbed the complainant in the neck.  When the complainant responded to being 
stabbed by grabbing Appellant with his other hand, Appellant stabbed the 
complainant in the chest.
Although 
testimony was presented raising the issue of self-defense, this alone does not 
entitle Appellant to a charge on sudden passion.[21]  A defendant who first attacks another 
cannot claim the other=s 
act of self-defense gave rise to adequate cause so that he was justified in 
killing him, even if he was acting under sudden passion after the 
other=s 
act of self-defense.[22]  Consequently, the trial court did not 
err by denying Appellant=s 
request for a jury instruction on sudden passion.  We overrule Appellant=s 
third point.
 
D.  Provocation

In 
his fourth point, Appellant argues that the trial court erred by instructing the 
jury as to provocation.  As a 
general rule, the use of force against another in self-defense is not justified 
if the actor provoked the other=s 
use or attempted use of unlawful force.[23]  Provoking the use of force acts as a 
limitation or total bar on a defendant=s 
right to self-defense.[24] 
 Here, after the jury was instructed 
on the issue of self-defense, it was further instructed on provocation over 
Appellant=s 
objection.  The provocation charge 
reads in pertinent part,
You 
are further instructed as part of the law of this case, and as a qualification 
on the law of self-defense, that the use of force by a defendant against another 
is not justified if the defendant provoked the other=s 
use or attempted use of unlawful force, unless the defendant abandons the 
encounter or clearly communicates to the other person his intent to do so, 
reasonably believing he cannot safely abandon the encounter; and the other 
person, nevertheless, continues or attempts to use unlawful force against the 
defendant.
 
The 
Texas Court of Criminal Appeals has held,
A 
charge on provocation is required when there is sufficient evidence (1) that the 
defendant did some act or used some words which provoked the attack on him, (2) 
that such act or words were reasonably calculated to provoke the attack, and (3) 
that the act was done or the words were used for the purpose and with the intent 
that the defendant would have a pretext for inflicting harm upon the other.[25]
 

The 
exact words said or action taken by the defendant causing the attack need not be 
proven to the jury; rather the jury must merely be able to find that there were 
some provoking acts or words.[26]  It will be enough if the evidence allows 
an inference beyond a reasonable doubt that the complainant attacked the 
defendant in response to something the defendant did or said.[27]
Here, 
Appellant was riding in a car that slowly entered the parking lot Alike 
its occupants were looking for someone.@  Near the exit, the engine=s 
motor revved, the car drove back around the lot, hit a parked rental truck, and 
stopped five or six inches behind the complainant=s 
car.  Appellant  then got out of the car with a knife in 
his hand and moved toward the complainant, whom Appellant admitted appeared to 
be unarmed.  These facts are some 
evidence from which the jury could conclude that Appellant provoked the 
difficulty.      An 
act is reasonably calculated to provoke an attack if it is reasonably capable of 
doing so or if it has a reasonable tendency to cause an attack.[28]  Here, there is evidence from which the 
jury could conclude that Appellant=s 
actions, as detailed above, were reasonably capable of provoking the complainant 
to grab Appellant around the neck or had a reasonable tendency to cause such a 
response.

Whether 
Appellant intended to provoke the difficulty can only be determined from the 
circumstances surrounding the attack.[29]  While Appellant testified that he did 
not go to the motel parking lot with the intention of confronting the 
complainant and that had he known that his uncle was going to confront the 
complainant, he would not have gone, he also testified that it was not customary 
for him to go with Schiffert to pick up Upchurch and that  Upchurch informed them on the way to the 
motel that the complainant had Aa 
bullet@ 
for Schiffert.  Also, Ward testified 
that she saw the car drive into the parking lot like its occupants were looking 
for someone and park five to six inches behind the complainant=s 
car.  Appellant admitted that they 
stopped behind the complainant=s 
car, which was directly in front of the complainant=s 
motel room, and Schiffert confronted the complainant over the phone by saying, 
AI=m 
looking at you right now[,] punk bitch.@  Finally, Appellant admitted that he 
exited the car only after he saw the complainant approaching the car without a 
weapon.  The jury could have 
believed that Appellant=s 
actions were the culmination of a plan to lure the complainant outside of his 
room.  Because sufficient evidence 
exists on each element of provocation to allow a rational jury to find 
provocation beyond a reasonable doubt, the trial court did not err by 
instructing the jury on provocation.  
We overrule Appellant=s 
fourth point. 
IV.  IMPROPER 
CLOSING 
ARGUMENTS 
AT 
THE 
GUILT 
PHASE

In 
his ninth point, Appellant attacks numerous separate rulings by the trial court 
regarding the State=s 
closing argument at the guilt phase.  
To be permissible, the State=s 
jury argument must fall within one of the following four general areas:  (1) summation of the evidence; (2) 
reasonable deduction from the evidence; (3) answer to argument of opposing 
counsel; or (4) plea for law enforcement.[30]
During 
its closing argument, the State argued the following regarding Schiffert's 
calling out the complainant before Appellant stabbed him:
[Prosecutor]:  His uncle went and got him to pick 
[Upchurch] up.  And recall what he 
said, that was not normal.  May have 
done it once or twice before but it was not normal.  Gee, man, I just happen to remember I 
got that knife in that glove box. . . .  
Gee, what a huge coincidence . . . . [W]e=re 
making a slow turn through this parking lot to go get her clothes.  Remember, he said, we=re 
going to get her clothes.  And, gee, 
what a huge coincidence[,] my uncle gets on the phone and calls the victim 
out.  That=s 
what he=s 
doing, he=s 
calling the victim out.  What a huge 
coincidence.
 
[Defense]:  Judge, I object, that=s 
improper argument, and the State is arguing exactly what I argued in the charge 
conference at that point in time about provoking the difficulty.  I object to that 
argument.
 
[Prosecutor]:  I=ll 
rephrase.
 
[Court]:  Please.
 
[Defense 
Counsel]:  And I=d 
ask the jury be instructed to disregard the last statement of the 
prosecutor.

[Court]:  I=m 
going to deny it at this time.
 
[Defense]:  I would ask for a ruling on my 
objection.
 
[Court]:  Overruled.
 
Seconds 
later, the prosecutor made the same argument, Appellant=s 
trial counsel objected on the same basis, and the trial court asked both sides 
to approach the bench, where the following occurred:
[Court]:  You keep saying he and I don=t 
know who you=re 
talking about.  When you say call 
who out.
 
[State]:  Schiffert is who I was referring 
to.
 
[Court]:  You=re 
saying thatC
 
[State]:  Schiffert called him out and 
he=s 
part of it becauseC
 
(Open 
Court)
 
[Court]:  Okay.  The objection is 
sustained.
 
[Defense]:  I ask the jury be instructed to 
disregard the last statements by the prosecutor.
 
[Court]:  You=ll 
disregard references to Schiffert being involved in provoking the 
difficulty.
 
[Defense]:  And I would ask for a mistrial at this 
time, Judge.
 
[Court]:  Denied.
 

Generally, 
an instruction to disregard impermissible argument cures any prejudicial 
effect,[31] 
and Appellant fails to convince us otherwise regarding this 
complaint.
During 
the rebuttal closing argument, the other prosecutor argued, AIt=s 
not self-defense to go over there, have somebody called outside to his 
death.@ 
However, instead of objecting on the same basis that the trial court had 
previously sustained, Appellant=s 
counsel objected that the argument was outside the record.  The trial court overruled the 
objection.  Based on our review of 
the record, the State=s 
argument that Schiffert called the complainant out was an appropriate summation 
of and reasonable deduction from the evidence.[32]  Accordingly, the trial court did not err 
by overruling counsel=s 
objection.


Appellant 
also contends that the State engaged in improper argument by characterizing him 
as Athe 
biggest coward that walks the face of the earth.@  His objection that the argument was 
Aimproper 
argument; outside the scope of the evidence@ 
was overruled by the trial court.  
On appeal, Appellant argues that the argument is Ahighly 
prejudicial, unsupported by the record, [and] inject[s] new and harmful facts 
into the case.@  Appellant relies on Denton v. 
State[33] 
out of this court.  Denton, 
however, does not provide authority for Appellant=s 
position; it is not  a name-calling 
case.[34]  Appellant cites no other authority for 
his argument.  In the interest of 
justice, however, we note that Texas courts have upheld arguments calling a 
defendant an animal,[35] 
a fool,[36] 
vicious,[37] 
a liar,[38] 
a dog,[39] 
a cold-blooded killer,[40] 
a jerk,[41] 
a troublemaker,[42] 
and a one-man crime wave[43] 
and contending that a defendant Ahas 
no conscience, no heart, no recognition of right or wrong [and is] perched on 
the rim of hell, looking deep into it@[44] 
as reasonable deductions from the evidence in light of the facts of each 
case.  In context of the entire 
record before us, the prosecutor=s 
argument was a reasonable deduction from the evidence.  Accordingly, the trial court did not err 
by overruling Appellant=s 
objection.        
Finally, Appellant contends that the State engaged in improper argument 
by saying:  AHe 
stepped overCthe 
guy that we=ve 
been heard [sic] [about] as being called noble, stepped over the man=s 
body that he had just murdered.@  The trial court overruled 
Appellant=s 
objection that the argument was outside the scope of the evidence.  If the prosecutor meant the statement 
figuratively, it was not improper.  
If he meant it literally, the statement was outside the record, and the 
trial court erred by allowing it.

Assuming 
that the prosecutor intended the comment that Appellant walked over the 
complainant=s 
body to be taken literally, in light of the entire record, the statement had 
little prejudicial effect.  The 
State did nothing to emphasize the allegedly erroneous comments, and the comment 
was a very small portion of the State=s 
entire argument at punishment.  
Additionally, at the time of the argument, the jury could have either 
believed Appellant=s 
version of the story and acquitted him because he acted in self-defense or 
accepted the State=s 
version.  The State contended that 
Appellant, participated in a calculated, premeditated scheme that involved 
calling the complainant out with the intent to make him vulnerable to being 
murdered and that Appellant did murder him.  The evidence overwhelmingly supports the 
State=s 
view of the murder.  Applying the 
appropriate measure of harm,[45] 
we hold that any error associated with those comments was harmless.  Accordingly, we overrule 
Appellant=s 
ninth point. 
V.  EVIDENCE 
AT 
THE 
PUNISHMENT 
PHASE
In 
point six, Appellant complains the trial court erred during the punishment phase 
by admitting evidence of his jail record.

During 
the punishment phase, Sergeant Donald Kraul of the Tarrant County 
Sheriff=s 
Office testified regarding State=s 
exhibit 15, a compilation of Appellant=s 
jail records made by Tarrant County Jail (ATCJ@) 
employees while Appellant was in their custody.  Kraul testified that the records were 
made and kept in the regular course of TCJ=s 
business and that they were made by individuals who had personal knowledge about 
the events reflected in them. When the State offered the records into evidence, 
Appellant objected that, among other things, the documents were hearsay and did 
not fall within the public records exception of rule 803(8)(B) of the Texas 
Rules of Evidence because they concerned matters observed by police officers and 
other law enforcement personnel in a criminal case.[46] 
 The State replied that it was 
offering the documents as business records under rule 803(6).[47]  Appellant further objected that rule 
803(6) should not serve to circumvent rule 803(8)(B) and cited the case of 
Cole v. State.[48]  The trial court overruled the objection. 


The 
twenty-two page jail records exhibit includes (1) Appellant=s 
booking questionnaire, including AReceiving 
Officer=s 
Observations,@ 
AReceiving 
Officer=s 
Screening Guidelines for Mental Disability/Suicide Risk,@ 
and AMedical 
Staff Recommendation@; 
(2) Disciplinary Reports; and (3) Disciplinary Hearing Reports, including guilty 
pleas, findings of guilt, and punishments assessed.  The records contain allegations of 
crimes and acts of misconduct.  The 
records also show that Appellant was incarcerated from November 2001 through 
late June 2002.
Appellant 
asserts that the exhibit as a whole is hearsay under rule 803(8) and thus 
inadmissible under the business records exception found in rule 803(6).  Specifically, Appellant argues that the 
decision in Cole renders his jail records inadmissible under rule 
803(8)(B) because they fall under the exclusion of matters observed by police 
officers and other law enforcement personnel.[49]  The State relies on Jackson v. 
State.[50]  The State=s 
reliance is misplaced.  
Jackson pre-dates the Court of Criminal Appeals=s 
original November 1990 opinion in Cole v. State and the opinion on 
rehearing from October 1992.[51]  The opinion on rehearing clarified but 
did not substantially change the original opinion.[52]
Rule 
803(8) provides an exception to the hearsay rule for the 
following:
Records, reports, 
statements, or data compilations, in any form, of public offices or agencies 
setting forth

(A) the activities of 
the office or agency, 
 
(B) matters observed 
pursuant to duty imposed by law as to which matters there was a duty to report, 
excluding in criminal cases matters observed by police officers and other law 
enforcement personnel; or
 
(C) 
in civil cases as to any party and in criminal cases as against the state, 
factual findings resulting from an investigation made pursuant to authority 
granted by law; unless the sources of information or other circumstances 
indicate lack of trustworthiness.[53]
It 
is undisputed that the reports were made by law enforcement personnel pursuant 
to their official duties.[54]  Consequently, under the plain language 
of rule 803(8)(B), the records are inadmissible hearsay.  Further, rule 803(8)(B) is a limitation 
on rule 803(6) (the business records exception) as well as on rule 803(8) 
generally.[55]  Rule 803(6) cannot be used to avoid the 
clear strictures of rule 803(8)(B).[56]

In 
addition to state rules and precedent, the Texas Court of Criminal Appeals has 
stated that we may look to federal cases, like United States v. Cain,[57] 
for guidance as to the scope and applicability of the Texas Rules of Evidence 
because our rules were patterned after the federal rules.[58]  Specifically, because rule 803(8) is 
worded almost identically to its federal counterpart, Texas courts weigh federal 
precedent more heavily in applying this exception.[59]  The reports in the case before us are 
inadmissible for precisely the same reasons that the Cain court held that 
the escape report made at a federal correctional institution was inadmissible.[60]  They are reports of crimes and acts of 
misconduct reported to or observed by law enforcement personnel.  They also reflect law enforcement 
personnel=s 
rulings regarding culpability and the punishment imposed by law enforcement 
personnel.

The 
purpose of the disciplinary reports was to take disciplinary action against 
Appellant in an adversarial proceeding.  
This is the equivalent of an offense report that is to be used for the 
purpose of litigation.  Rule 
803(8)(B) is clear and unambiguous.  
As the  Cain court 
unequivocally stated, evidence that is inadmissible under federal rule 803(8)(B) 
cannot be admitted into evidence through the back door as a business record 
under federal rule 803(6).[61]  To hold otherwise in this state 
proceeding would allow clearly inadmissible evidence to be received through the 
same back door that the well‑established law is designed to slam shut.[62]
The 
rule 803(6) business records exception does not overcome the mandates of rule 
803(8)(B).  We therefore hold that 
the trial court erred by admitting State=s 
exhibit 15.  We do not reach 
Appellant=s 
remaining arguments concerning the records= 
inadmissibility.[63]
The 
erroneous admission of evidence is a nonconstitutional error which must be 
disregarded unless it affected a substantial right.[64] 
 The background information and acts 
of misconduct contained in State=s 
exhibit 15 involve violations of jail rules, fighting, possessing a razor blade, 
possessing tattoo paraphernalia, threatening a guard, and various punishment 
decisions after a finding that Appellant had indeed committed the complained-of 
violations.  This information shows 
a propensity to commit violence and Appellant=s 
refusal to moderate his behavior.  
The medical screening form also shows that Appellant used controlled 
substances and alcohol and had at least one juvenile arrest.  

Our 
review of the other evidence in this case reveals the following.  Tom Battle, Jr. testified that he knew 
Appellant when Appellant was fifteen or sixteen years old and attending the 
school where Battle was employed as a behavior interventionist.  Battle described an incident in which 
Appellant knocked over some computer equipment during a computer class, swore at 
him, and struck him in the head.
Another 
witness, Leon Winchester, testified that on November 4, 2001, he participated 
with Appellant in the aggravated robbery of a woman and her pregnant daughter, 
Jodi Lohr, at a house in Fort Worth.  
Winchester claimed that he, Schiffert, and Appellant committed the 
robbery to steal drugs.  According 
to Winchester, Appellant used a .357 magnum handgun during the robbery.  Jodi Lohr testified that the 
perpetrators pointed guns at her and threatened to kill her and her 
mother.

Further, 
Appellant testified during the guilt phase of the trial that he stabbed the 
unarmed complainant in the neck and the chest, even though he could have left 
the scene.  Appellant also stated 
that neither Schiffert nor Upchurch was in any immediate danger of harm from the 
complainant.   Appellant 
additionally testified that he left the complainant at the scene to die.  Additionally, Ginny Ward, an eyewitness 
to the murder, testified that as the complainant stood up from loading his car, 
she observed Appellant run up to him and stab him in the neck and chest.  She stated that she did not see the 
complainant make any aggressive movements toward Appellant.  Finally, during its argument at the 
punishment phase, the State asked the jury to Astart 
at fifty [years] and work [its] way up.@  The jury assessed punishment at 
twenty-seven years but could have assessed punishment of up to ninety-nine years 
or life.[65]
Applying 
the appropriate measure of harm,[66] 
we conclude that the error did not influence the jury or had but a slight effect 
on the punishment assessed.[67] 
We therefore conclude that the trial court=s 
error in admitting State=s 
exhibit 15 did not affect a substantial right of Appellant.  Accordingly, we overrule 
Appellant=s 
sixth point.

In 
point seven, Appellant complains that the trial court erred by admitting  evidence of an extraneous offense at 
punishment because the evidence was legally insufficient to prove the offense 
beyond a reasonable doubt.  
Appellant=s 
complaint involves the uncorroborated testimony of Leon Winchester, who 
testified that he, Appellant, and Schiffert committed an aggravated robbery on 
November 4, 2001.  Appellant 
objected and informed the trial court that the State had not indicted Appellant 
for the offense because it could not corroborate Winchester=s 
accomplice testimony and that without corroboration, the State could not prove 
the extraneous offense beyond a reasonable doubt.  The State conceded that 
Winchester=s 
testimony was uncorroborated, but argued that corroboration is not required at 
the punishment phase.  The trial 
court overruled Appellant=s 
objection.
The 
trial court=s 
decision to admit evidence is reviewed under an abuse of discretion standard.[68]  Evidence of extraneous crimes or bad 
acts can be introduced during the punishment phase if it is shown beyond a 
reasonable doubt that the defendant committed them, even if they have not 
resulted in a conviction.[69]  But 
article 38.14 of the Code of Criminal Procedure provides,
A conviction cannot 
be had upon the testimony of an accomplice unless corroborated by other evidence 
tending to connect the defendant with the offense committed; and the 
corroboration is not sufficient if it merely shows the commission of the 
offense.[70]
 

That 
is, the State cannot convict a defendant with accomplice testimony alone and 
must corroborate the accomplice testimony with other evidence tending to connect 
the defendant with the offense committed.[71]  The statute says nothing about the use 
of accomplice testimony at punishment.
Although 
the Texas Court of Criminal Appeals has yet to determine whether article 38.14 
applies to the punishment phase of a noncapital trial, it has held that 
corroboration is not required when the State offers testimony of an accomplice 
witness to prove (1) an extraneous offense at the punishment stage of a capital 
murder trial or (2) the use or exhibition of a deadly weapon.[72]  Additionally, other Texas courts of 
appeals have held that the requirement of article 38.14 does not apply when the 
State offers testimony of an accomplice witness to prove extraneous offenses at 
the punishment stage of trial in a noncapital case.[73]

We 
note that article 38.14 is a rule for sufficiency review, not an evidentiary 
rule.[74]  Consequently, it does not govern the 
admissibility of evidence; rather, it governs determinations of sufficiency of 
the evidence when an accomplice testifies.[75]  Article 37.07, section 3(a), on the 
other hand, which governs the admissibility of evidence at the punishment phase, 
is an evidentiary rule, but it contains no requirement that the accomplice be 
corroborated.[76]  We therefore hold that the trial court 
did not err by admitting Winchester=s 
uncorroborated testimony at the punishment phase because corroboration was not 
required.  We overrule 
Appellant=s 
seventh point.
VI.  CONCLUSION
Having 
overruled Appellant=s 
nine points, we affirm the trial court=s 
judgment.
 
LEE 
ANN DAUPHINOT
JUSTICE
 
EN 
BANC
 
CAYCE, 
C.J. concurs without opinion.
MCCOY, 
J. concurs without opinion.
 
PUBLISH
 
DELIVERED: 
March 30, 2006
 




[1]See 
Tex. R. 
Evid. 103(a)(2); Tex. R. App. P. 33.2; Fairow v. 
State, 943 S.W.2d 895, 897 n.2 (Tex. Crim. App. 1997); Chambers v. 
State, 866 S.W.2d 9, 27 (Tex. Crim. App. 1993), cert. denied, 511 U. 
S. 1100 (1994).

[2]See 
Tex. 
R. App. P. 
33.1(a); Reyna v. State, 168 S.W.3d 173, 178-80 (Tex. Crim. App. 
2005).

[3]758 
S.W.2d 597, 598 (Tex. Crim. App. 1988).

[4]See 
id. at 
600.

[5]See 
Tex. Code Crim. Proc. Ann. art. 
37.09 (Vernon 1981); Moore v. State, 969 S.W.2d 4, 8 (Tex. Crim. App. 
1998).

[6]Feldman 
v. State, 
71 S.W.3d 738, 750 (Tex. Crim. App. 2002);  
Moore, 969 S.W.2d at 8.

[7]See 
Tex. 
Penal Code Ann. 
' 
19.04(a) (Vernon 2003).

[8]See 
id. ' 
6.03 (Vernon 2003).

[9]See 
Munoz v. State, 
932 S.W.2d 242, 245 (Tex. App.CTexarkana 
1996, no pet.).

[10]See 
Godsey v. State, 
719 S.W.2d 578, 584 (Tex. Crim. App. 1986); Martinez v. State, 16 S.W.3d 
845, 847 (Tex. App.CHouston 
[1st Dist.] 2000, pet. ref=d).

[11]Feldman, 
71 S.W.3d at 750; Moore, 969 S.W.2d at 8.

[12]Brown 
v. State, 
955 S.W.2d 276, 279 (Tex. Crim. App. 1997); Golden v. State, 851 S.W.2d 
291, 295 (Tex. Crim. App. 1993).

[13]Hughes 
v. State, 
719 S.W.2d 560, 564 (Tex. Crim. App. 1986).

[14]See 
id.; 
see 
also Tex. 
Penal Code Ann. 
'' 9.32(a), 
9.33 (Vernon 2003).

[15]See 
Tex. Penal Code Ann. ' 
19.02(d) (Vernon 2003).

[16]See 
id.

[17]See 
id. 
' 
19.02(a)(2).

[18]See 
id. 
' 
19.02(a)(1).

[19]See 
Jones v. State, 
963 S.W.2d 177, 180 (Tex. App.CFort 
Worth 1998, pet. ref=d).

[20]See 
Villegas v. State, 
791 S.W.2d 226, 239 (Tex. App.CCorpus 
Christi 1990, pet. ref=d).

[21]Jones, 
963 S.W.2d at 180.

[22]See 
Adanandus v. State, 
866 S.W.2d 210, 231-32 (Tex. Crim. App. 1993), cert. denied, 510 U.S. 
1215 (1994); Villegas, 791 S.W.2d at 239.  

[23]See 
Tex. 
Penal Code Ann. 
' 
9.31(b)(4) (Vernon 2003).

[24]See 
Smith v. State, 
965 S.W.2d 509, 512 (Tex. Crim. App. 1998). 

[25]Id. at 
513.

[26]See 
id. 
at 515.

[27]See 
id. 
at 516.

[28]Id. at 
517.

[29]See 
Matson v. State, 
819 S.W.2d 839, 846 (Tex. Crim. App. 1991).  

[30]Felder 
v. State, 
848 S.W.2d 85, 94-95 (Tex. Crim. App. 1992), cert. denied, 510 U.S. 829 
(1993); Alejandro v. State, 493 S.W.2d 230, 231 (Tex. Crim. App. 
1973).
 

[31]Wesbrook 
v. State, 
29 S.W.3d 103, 115 (Tex. Crim. App. 2000), cert. denied, 532 U.S. 944 
(2001); Dinkins v. State, 894 S.W.2d 330, 357 (Tex. Crim. App.), cert. 
denied, 516 U.S. 832 (1995).

[32]See 
Felder, 
848 S.W.2d at 94-95; Alejandro, 493 S.W.2d at 231. 


[33]Denton 
v. State, 
946 S.W.2d 607, 611 (Tex. App.CFort 
Worth 1997, pet. ref=d) 
(op. on reh=g).

[34]See 
id.

[35]Belton 
v. State, 
900 S.W.2d 886, 898 (Tex. App.CEl 
Paso 1995, pet. ref=d).

[36]Vitiello 
v. State, 
848 S.W.2d 885, 888 (Tex. App.CHouston 
[14th  Dist.] 1993, pet. 
ref=d).

[37]Ledesma 
v. State, 
828 S.W.2d 560, 563 (Tex. App.CEl 
Paso 1992, no pet.).

[38]Adams 
v. State, 
813 S.W.2d 698, 700-01 (Tex. App.CHouston 
[1st Dist.] pet. ref=d).

[39]Garza 
v. State, 
783 S.W.2d 796, 800 (Tex. App.CSan 
Antonio 1990, no pet.).

[40]Varvaro 
v. State, 
772 S.W.2d 140, 144 (Tex. App.CTyler 
1988, pet. ref=d).

[41]Cates 
v. State, 
752 S.W.2d 175, 177 (Tex. App.CDallas 
1988, no pet.).

[42]Duncantell 
v. State, 
563 S.W.2d 252, 258 (Tex. Crim. App.), cert. denied, 439 U.S. 1032 
(1978).

[43]Villarreal 
v. State, 
576 S.W.2d 51, 63 (Tex. Crim. App. 1978), cert. denied, 444 U.S. 885 
(1979).

[44]McKay 
v. State, 
707 S.W.2d 23, 36 (Tex. Crim. App. 1985), cert. denied, 479 U.S. 871 
(1986).

[45]See 
Tex. 
R. App. P. 44.2(b); 
Martinez v. 
State, 17 S.W.3d 
677, 692-93 (Tex. Crim. App. 2000); Mosley v. State, 983 S.W.2d 249, 259 
(Tex. Crim. App. 1998) (op. on reh=g), cert. denied, 526 U.S. 
1070 (1999).

[46]See 
Tex. R. Evid. 
803(8)(B).

[47]See 
Tex. 
R. Evid. 
803(6).

[48]839 
S.W.2d 806 (Tex. Crim. App. 1992) (op. on reh=g).

[49]See 
Tex. 
R. Evid. 
803(8)(B); see also Cole, 839 S.W.2d at 811.

[50]Jackson 
v. State, 
822 S.W.2d 18, 30-31 (Tex. Crim. App. 1990), cert. denied, 509 U.S. 921 
(1993).

[51]Cole 
v. State, 
839 S.W.2d 798 (Tex. Crim. App. 1990), reh=g 
granted, 
839 S.W.2d 806 (Tex. Crim. App. 1992) (clarifying original opinion and finding 
the State=s 
motion for rehearing without merit).

[52]Cole, 
839 S.W.2d at 808, 810.

[53]Tex. 
R. Evid. 
803(8) (emphasis added).

[54]See 
id.

[55]See 
id.; 
see also Tex. R. Evid. 
803(6).

[56]Cole, 
839 S.W.2d at 811.

[57]United 
States v. Cain, 
615 F.2d 380, 380‑82 (5th Cir. 1980).

[58]Cole, 
839 S.W.2d at 801.

[59]Id. at 
801‑02.

[60]Cain, 
615 F.2d at 380‑82.

[61]Id; 
see also Cole, 839 S.W.2d at 811.

[62]See 
Cain, 
615 F.2d at 380‑82; Cole, 839 S.W.2d at 811; Willis v. State, 2 
S.W.3d 397, 401 (Tex. App.CAustin 
1999, no pet.).

[63]See 
Tex. 
R. App. P. 
47.1.

[64]See 
Tex. R. App. P. 
44.2(b); Mosley, 983 S.W.2d at 259; Coggeshall v. State, 961 
S.W.2d 639, 642-43 (Tex. App.CFort 
Worth 1998, pet. ref=d).

[65]See 
Tex. Penal Code Ann. ' 
12.32(a) (Vernon 2003)

[66]See 
Tex. 
R. App. P. 
44.2(b); King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) 
(citing Kotteakos v. United States, 328 U.S. 750, 776, 66 S. Ct. 1239, 
1253 (1946)).

[67]See 
Tex. Penal Code Ann. '' 
12.32(a), 19.02(c) (Vernon 2003).

[68]See 
Green v. State, 
934 S.W.2d 92, 101-02 (Tex. Crim App. 1996), cert. denied, 520 U.S. 1200 
(1997).

[69]See 
TEX. 
CODE 
CRIM. 
PROC. 
ANN. 
art. 37.07, ' 
3(a) (Vernon Supp. 2005).

[70]Id. 
art. 38.14 (Vernon 2005).

[71]Id.

[72]See 
Vasquez v. State, 
56 S.W.3d 46, 48 (Tex. Crim. App. 2001); Jones v. State, 982 S.W.2d 386, 
395 (Tex. Crim. App. 1998), cert. denied, 528 U.S. 985 
(1995).

[73]See, 
e.g., Salazar v. State, 
87 S.W.3d 680, 683 (Tex. App.CSan 
Antonio 2002, no pet.); Megas v. State, 68 S.W.3d 234, 242 (Tex. 
App.CHouston 
[1st Dist.] 2002, pet. ref=d); 
Goodman v. State, 8 S.W.3d 362, 364 (Tex. App.CAustin 
1999, no pet.); Johnson v. State, 969 S.W.2d 134, 135 (Tex. 
App.CTexarkana 
1998, pet. ref=d). 


[74]See 
Tex. Code Crim. Proc. Ann. art. 
38.14.

[75]See 
id.

[76]See 
id. art. 
37.07, ' 
3(a).