ACCEPTED
04-14-00626-CR
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
4/9/2015 8:54:33 AM
KEITH HOTTLE
CLERK

## NO 04-14-00626-CR

In The Court Of Appeals For The
Fourth Supreme Judicial District of Texas
San Antonio, Texas

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
4/9/2015 8:54:33 AM
KEITH E. HOTTLE
Clerk

ALVIN VALADEZ JR.,

Appellant

vs.

THE STATE OF TEXAS,

Appellee

On Appeal From the 25th District Court
Of Guadalupe County, Texas
Hon. Bud Kirkendall
Trial Court Cause No. 13-1568-CR-C

## APPELLEE'S BRIEF

/s/Christopher M. Eaton
Christopher M. Eaton
Assistant County Attorney
Guadalupe County, Texas
State Bar No. 24048238
211 W. Court St., 3rd Floor
Seguin, Texas 78155
Phone: (830) 303-6130
Fax: (830) 379-9491
**Attorney for Appellee**

## NAMES OF THE PARTIES

1.  **Alvin Valadez** is the appellant.

2.  **Rolando Garcia** represented the appellant at the trial court.

3.  **Keith Henneke** and **Steven De Lemos** represented the State of Texas at the trial court.

4.  **Edward Shaugnessy** represents the appellant in his appeal to this Honorable Court.

5.  **Christopher Eaton** represents the State of Texas for purposes of this appeal.

# TABLE OF CONTENTS

NAMES OF THE PARTIES ...................................................................................... i

TABLE OF CONTENTS ........................................................................................ ii

TABLE OF AUTHORITIES ..................................................................................... v

    United States Supreme Court Cases ................................................................ v

    Texas Court of Criminal Appeals Cases .......................................................... v

    Texas Appellate Court Cases ........................................................................ vi

    Texas Statutes ............................................................................................ vii

STATEMENT REGARDING ORAL ARGUMENT ........................................................ ix

ISSUE PRESENTED ............................................................................................. x

    The trial court properly denied appellant's motion to suppress because the arrest warrant was supported by probable cause for the offense of engaging in organized criminal activity. In the alternative, the arresting officer properly relied on objective good faith under section 38.23(b) of the Code of Criminal Procedure when he arrested appellant ................................................. x

STATEMENT OF THE CASE .................................................................................. 1

STATEMENT OF THE FACTS ................................................................................ 1

    1. Appellant's Arrest .................................................................................. 1

    2. The Arrest Warrant ................................................................................ 2

    3. Conclusions of Law ............................................................................... 5

SUMMARY OF THE ARGUMENTS ......................................................................... 6

ARGUMENT AND AUTHORITIES .......................................................................... 8

REPLY POINT 1: THE TRIAL COURT PROPERLY DENIED APPELLANT'S MOTION TO SUPPRESS BECAUSE THE ARREST WARRANT WAS SUPPORTED BY PROBABLE CAUSE. IN THE ALTERNATIVE, THE ARRESTING OFFICER PROPERLY RELIED ON OBJECTIVE GOOD FAITH UNDER SECTION 38.23(B) OF THE CODE OF CRIMINAL PROCEDURE WHEN HE ARRESTED APPELLANT ....................................................................................... 8

A.  Standard of Review.................................................................... 8

  1.  Magistrate's Determination of Probable Cause ................................ 8

  2.  All Other Issues ................................................................... 9

B.  The Affidavit Supports The Magistrates Determination of Probable Cause Because There Was At Least A Probaility That Appellant Committed The Offense of Engaging In Organized Criminal Activity By Conspiring To Commit The Underlying Offense of Aggravated Assault And/Or As A Party To That Offense ............................................................................ 10

C.  In The Alternative, The Trial Court Properly Denied Appellant's Motion To Suppress Because The Affidavit Contains Probable Cause For All Of The Additional Offenses Listed By The Trial Court. Based On These Findings The Warrant Should Be Upheld As Valid Or, In The Altertnative, The Arresting Officer Properly Relied On That Warrant Under The Good Faith Exeption Listed In Section 38.23(b) Of The Code Of Criminal Procedure .................... 16

  1.  The Trial Court Properly Held That Detective Halbardier's Affidavit Contained Probable Cause For The Additional Offenses of Conspiracy To Commit Aggravated Assault, Aggravated Assault As A Party, Obstruction or Retaliation and Witness Tampering .................. 16

  2.  Because The Warrant Contained Probable Cause For The Additional Offenses Listed By The Trial Court The Warrant Should Be Upheld Just As The Warrants In *Borsari v. State* and *Villegas v. State* Was Under Very Similar Circumstances ................................................. 19

iii

3. Because The Warrant Was Support By Probable Cause For the Additional Offenses Listed By The Trial Court Investigaor Campos Acted In Objective Good Faith Reliance On The Warrant .......................................................... 23

PRAYER ....................................................................................... 25

CERTIFICATE OF SERVICE ........................................................ 25

# TABLE OF AUTHORTIES

**United States Supreme Court Cases**

United States v. Ventresca, 380 U.S. 102 (1965) ........................................................22, 24

**Texas Court of Criminal Appeals Cases**

Barber v. State, 764 S.W.2d 232
(Tex. Crim. App. 1988) ...................................................................................... 17

Beier v. State, 687 S.W.2d 2
(Tex. Crim. App. 1985) ..................................................................................15, 20

Creel v. State, 754 S.W.2d 205
(Tex. Crim. App. 1988) ...................................................................................... 15

Hankins v. State, 132 S.W.3d 380
(Tex. Crim. App. 2004), *superceded by statute on other grounds*, Tex. Crim. Proc. Code
    Ann. § 37.071(2)(e)(2)(B) (West 2013) ............................................................ 9

Guzman v. State, 955 S.W.3d 85
(Tex. Crim. App. 1997). ...................................................................................... 9

Jones v. State, 833 S.W.3d 118
(Tex. Crim. App. 1992) ...............................................................................9, 10, 11

Martinez v. State, 348 S.W.3d 919
(Tex. Crim. App. 2011) ........................................................................................ 9

McFarland v. State, 928 S.W.3d 482
(Tex. Crim. App. 1996) ...................................................................................... 10

Rodriguez v. State, 232 S.W.3d 55
(Tex. Crim. App. 2007) ....................................................................................8, 10

Ross v. State, 32 S.W.3d 853
(Tex. Crim. App. 2000) ...................................................................................... 10

State v. Jordan, 342 S.W.3d 565
(Tex. Crim. App. 2011) ...................................................................................... 22

State v. McLain, 337 S.W.3d 268
(Tex. Crim. App. 2011) ........................................................................................ 8

Swearingen v. State, 143 S.W.3d 808
(Tex. Crim. App. 2004) ........................................................................................ 8

**Texas Appellate Court Cases**

Barrera v. State, 321 S.W.3d 137
(Tex. App.—San Antonio 2010, pet. ref'd) ................................................. 12, 17

Barton v. State, 962 S.W.2d 132
(Tex. App-Beaumont 1997, pet. ref'd) ............................................................... 11

Bell v. State 169 S.W.3d 384
(Tex. App.—Ft. Worth 2005, pet. ref'd) .............................................................. 8

Belton v. State, 900 S.W.2d 886
(Tex. App.—El Paso 1995, pet. ref'd) ............................................................... 11

Borsari v. State, 919 S.W.2d 913
(Tex. App.—Houston[14th] 1996, pet. ref'd) ............................................... 19, 21

Cummings v. State, 651 S.W.2d 14, 15
(Tex. App.—Amarillo 1983, no pet.) ................................................................. 11

Glaze v. State, 230 S.W.3d 258
(Tex. App.—Waco 2007, pet. ref'd) .................................................................... 8

Guerrero v. State, 2009 WL 2525434
(Tex. App.—San Antonio 2009, pet. ref'd), *cert. denied*, 131 S.Ct. 462 (2012) (not
   designated for publication) ................................................................................ 8

Hall v. State, 753 S.W.2d 438
(Tex. App--Texarkana 1988), *overruled on other grounds*, 75S.W.2d 195 (Tex. Crim.
   App. 1990)..................................................................................................................20

Husting v. State, 790 S.W.2d 121
(Tex. App—San Antonio 1990, not pet.) .................................................................15, 20

Miller v. State, 83 S.W.3d 308
(Tex. App.—Austin 2002, pet. ref'd) .............................................................................20

Moss v. State, 75 S.W.3d 132
(Tex. App.—San Antonio 2002, pet. ref'd).....................................................................10

Ozuna v. State, 88 S.W.3d 307
(Tex. App-San Antonio 2002, pet' ref'd).......................................................................9, 11

Salio v. State, 910 S.W.2d 184
(Tex. App.—Ft. Worth 1995, pet. ref'd) .....................................................................11, 16

Shelton v. State, 2013 WL 5773692
(Tex. App.—Tyler 2013, no pet.) (not designated for publication); ..................................9

State v. Jimenez, 2008 WL 3823998
(Tex. App.—Dallas 2008, pet. ref'd) (not designated for publication)........................8, 11

White v. State, 746 S.W.2d 775
(Tex. App—Dallas 1985, no pet.) .............................................................................11, 16

Villegas v. State, 791 S.W.2d 226
(Tex. App-Corpus Christ 1990, pet. ref'd)..................................................................19, 21

**Texas Statutes**

Tex. Crim. Proc. Code Ann. § 38.23(b) (West 2013) .........................................................23

Tex. Crim. Proc. Code Ann. 45.014 (West 2013) ..............................................................22

Tex. Elec. Code Ann.  § 141.001 (West 2013)....................................................................22

Tex. Gov't Code Ann. § 25.0014 (West 2013) ...................................................... 22

Tex. Gov't Code Ann. §§ 27.001-27.061 (West. 2013) ...................................................... 22

Tex. Penal Code Ann. § 71.01(b) (West 2013) ...................................................... 12

Tex. Penal Code Ann. § 71.02(a)(1) (West 2013) ...................................................... 12, 17

Tex. Penal Code. Ann. § 15.02(a) (West 2013) ...................................................... 17

Tex. Penal Code. Ann. § 22.02 (West 2013) ...................................................... 17

Tex. Penal Code. Ann. § 35.05(a)(1)-(2) (West 2013) ...................................................... 18

Tex. Penal Code Ann. § 36.06(a)(1) (West 2013) ...................................................... 18

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument requested.

## ISSUE PRESENTED

The trial court properly denied appellant's motion to suppress because the arrest warrant was supported by probable cause for the offense of engaging in organized criminal activity. In the alternative, the arresting officer properly relied on objective good faith under section 38.23(b) of the Code of Criminal Procedure when he arrested appellant.

**STATEMENT OF THE CASE**

On August 6, 2013, appellant was indicted for the offense of possession of a controlled substance pentalty group one in an amount of more than one gram but less than four grams. (Clerk's Records ("CR"), pg. 9). On June 12, 2014, appellant filed a motion to suppress. (CR, pg. 16). That motion was heard in front of Judge Kirkendall on August 20, 2014. (Reporter's Record Vol. 2 ("RR")). Judge Kirkendall denied the motion that same day. (RR Vol. 2, pg.27). After the denial of the motion to suppress, the case went to jury trial on August 25, 2014. (RR Vol. pg. 3-6). At trial the defendant was found guilty and sentenced to life imprisonment. (RR Vol. 5, pg. 22; RR Vol. 6, pg. 103) Appellant now appeals the denial of his motion to suppress.

**STATEMENT OF FACTS**

Because appellant's only ground for review is the denial of his motion to suppress, appellee's statement of facts will be limited to that issue.

**I.     Appellant's Arrest**

Investigator David Camacho of the Guadalupe County Sherriff's Office was one of two witnesses to testify at the hearing. (RR Vol. 2). On August 28, 2012, he learned that there was an arrest  warrant for appellant. Id. at 2 After confirming the warrant with dispatch, Camacho and another officer drove to appellant's residence in order serve the warrant. Id. at 10-11. When Camacho arrived at appellant's residence he knocked on the door and appellant answered. Id. at 11. Camacho informed him of the warrant and appellant attempted to run back inside the house in response. Id. In order to prevent him from escaping, Camacho grabbed appellant's T-shirt and a scuffle ensued in appellant's

1

front yard. Id. Once appellant was secured, he was searched incident to arrest. Id. at 11-12. During that search, Camacho found four balloons filled with heroine in appellant's pockets. Id. at 12. Camacho stated that he had no reason to believe that the arrest was not supported by probable cause. Id. He also had no reason to believe that the arrest warrant was not valid. Id.

## II.    The Arrest Warrant

The arrest warrant authorized the arrest of appellant for the offense of engaging in organized criminal activity. (RR Vol. 7, State's Exhibit No. 1). That warrant was supported by a five page complaint written by Detective Clinton Halbardier. (RR Vol. 7, Exhibit No. 2, pg. 1)[1]. That complaint stated that Halbardier had reason to believe appellant and five other individuals committed the offense of engaging in organized criminal activity with the underlying offense being the aggravated assault of Roberto Herrera. Id. According to Halbadier, he obtained his knowledge by reading the Seguin Police Department offense reports and supplements, through previous investigations involving several of the listed suspects, and his own interviews with multiple witnesses and suspects. Id.

The complaint indicated that Herrera was stabbed and beaten on August 26, 2012. Id. at 2. Before being taken to the hospital, Herrera stated that Danny Gonzales (one the six suspects listed in the affidavit) had been involved in the assault.[2] Id. at 2. At the

---

[1] Detective Halbardier's affidavit does not contain pages numbers. However, in order to be as precise as possible with its citations appellee will refer to the first page of the complaint/affidavit as page 1 and the subsequent pages as pages 2-5 respectively with page 5 being the one with the magistrate's signature.
[2] The other suspects listed in the affidavit were Roy Martinez, Christopher Lopez, Ezekiel Herrera Longoria, Abel Lomas, and appellant.

2

hospital, Herrera told Detective Diaz he was with Christopher Lopez and another individual on the night of the assault. Id. at 3. At some point Herrera was approached by Ezekial Herrera Longoria who asked him what gang he was a member of. Id. When Herrera said "Orejones" Longoria told him he'd better deny being Orejones because this was a "EME" or "Merecido" area. Id. Earlier in the complaint, Dectective Halbarider implied "Merecido" is a reference to the Mexican Mafia when he noted that "Merecido Party" referred to ranking Mexican Mafia involvement. Id.

After Longoria told Herrera to deny being Orejones, Herrera got out of his vehicle to speak with Longoria. Id. When he did so Gonzales and Abel Lomas approach him from behind. Id. Longoria then waived his had and Herrera was attacked from behind by five or six males, including Gonzales and Roy Martinez. Id.

In addition, to Herrera's statements the affidavit also contained statements from four witnesses who asked to be unnamed in the complaint for "personal safety and security" reasons. Id. UW1 was a resident of Seguin who was gainfully employed, had provided credible informantion in the past, had acquaintances involved in the Mexican Mafia, and knew the details of the Mexican Mafia. Id. UW2 was present on scene at the time of the assault and, according to the complaint, his statements were corroborated by Herrera's statement. Id. UW3 was a gainfully employed resident of Texas who had acquaintances involved in the Mexican Mafia. Id. UW4 was also a resident of Seguin and had no criminal history. Id. In his complaint, Halbardier stated that based on the above information he believed these witnesses to be credible and that the magistrate could rely on them. Id.

3

Notably UW2, in addition to stating that Gonzales and Lomas were involved in the assault, told Detective Diaz that he had heard one of the suspects yelling that this was a "Merecido Party." Id. at 3. UW3 added that Gonzales had threatened him and told him to not report the incident to the police. Id. Appellant also threatened UW3 and told him to not talk to the police about the assault on Herrera. Id. UW3 also told investigators that he had heard Gonzales talking to a high ranking member from the Mexican Mafia from San Antonio. Id. Specifically, he heard Gonzales telling this individual that the assault was set up by Christopher Lopez because Herrera was suspected of stealing drugs from appellant. Id. UW4 stated Gonzales and appellant had threatened him. Id.at 3-4.

The complaint stated that all six suspects, including appellant were confirmed to be active gang members. Id. at 4. Halbadier learned this information over "the past several months of investigating multiple violent gang related offenses," with 'several [l]ocal, [s]tate, and [f]ederal [o]fficers." Id. Halbardier outlined their specific affiliation, in relevant part as follows:

> Alvin "Ace" Pan Valadez is a documented Mexican Mafia gang member through [n]ational and [s]tate [d]ata [b]ase information searches. He is also [sic] lieutenant with the Mexican Mafia.
>
> Danny Gonzales is a documented Mexican Mafia gang member through [n]ational and [s]tate [d]ata [b]ase information searches. Danny also has several gang related tattoos on his body, know [sic] to associate with gang member [sic], and has been arrested at documented gang member residences.
>
> Christopher Lopez is a documented Mexican Mafia gang member through [n]ational and [s]tate [d]ata [b]ase information searches.
>
> Ezekial Longoria associates with documented gang members, at locations frequented by gang members, and [sic]confirmed by credible informants.

4

> Abel Lomas associates with documented gang member, at locations frequented by gang members, and [sic] confirmed by credible informants. Abel has been identified as the offender in several aggravated assaults, home invasion robberties, and deadly conduct incidents.
>
> Roy Martinez associates with documented gang members, [sic] seen at locations frequented by gang members,[sic], and [sic] confirmed by credible informants.

Id. at 4.

Finally, at the hearing on the motion to suppress, the State called Detective Halbardier for the purpose of demonstrating some of the reasonable inferences that were made when Judge Friesenhahn signed the warrant. (RR Vol. 2, pg. 8). During his testimony Halbardier explained the overall structure of the Mexican Mafia. Id. at 17. He noted that lieutenants were generally in charge of a specific city or county. Id. He added that the Mexican Mafia, as part of their activities, engaged in assaults. Id. at 17-18. He described sanctioned and unsanctioned assaults. Id. at 18. A sanctioned assault was one the offender was given permission by a ranking member of the Mexican Mafia and an unsanctioned assault was one where no such permission was given. Id.[3] According to Halbadier, the assault on Herrera was sanctioned by appellant. Id.

## III.    Conclusions of Law

At the trial on the merits (after the parties had rested, but before the jury's verdict), the trial court issued several conclusions of law. (RR Vol. 5 pg. 18-19). The trial court concluded that:

---

[3] If an assault was unsanction, the individual would have to explain themselves and could either be subject to a tax by the gang or be assaulted themselves Id. at 18.

(1) The defendant was arrested on a warrant issued on August 28th, 2012, by Justice Peace Precinct Four, Guadalupe County, based on a probable cause affidavit submitted by Dectective Clint Halbardier.

(2) The probable cause affidavit for said warrant contained information which established probable cause for Alvin Valadez Jr. to be charged with various offenses, including conspiracy to commit aggravated assault, aggravated assault as a party to that offense, organized criminal activity to commit aggravate assault, obstrution or retaliation, and even possibly witness tampering.

(3) Because such probable cause was established for each offense, the Justice of the Peace could've issued the warrant naming any of those felony offenses.

(4) The arresting officers were acting in good faith reliance on the warrant. Even if the probable cause was inadequate for organized criminal activity, probable cause was established for other felony offenses.

Id. at 18-19.

## SUMMARY OF THE ARGUMENTS

The trial court properly denied the trial court's motion to suppress because the complaint contained sufficient probable cause to authorize appellant's arrest for the offense of engaging in organized criminal activity. The magistrate could infer that appellant had conspired with other members of the Mexican Mafia, a well-known organized criminal street gang, to commit an aggravated assault against Robert Herrera.

Before and during the assault on Herrera there were references to the area being a "Merecido" or "Merecido party," a reference to the Mexican Mafia. Just prior to the assault one of the assialants, Ezekial Longoria, motioned for several others to attack Herrera from behind. Virtually all of the assialants, Longoria included, were either members of the Mexican Mafia or were known to frequently associate with them. Thus,

the magistrate could have rationally inferred that the assault on Herrera was a sanctioned assault set-up by the Mexican Mafia. Furthermore, the complaint indicates that appellant was not only a member of the same gang, but was also one of its lieutenants and ran the organization within the city of Seguin. When this is combined with appellant's multiple attempts to silence witnesses and the fact that the entire purpose of the assault was retaliation for Herrera stealing drugs from appellant, the magistrate could have rationally concluded appellant had conspired to commit the aggravated assault on Herrera as part of the Mexican Mafia. For the same reasons the magistrate also could have concluded that appellant was a party to the offense of enganging in organized criminal activity.

In the alternative, the warrant is still valid because the supporting complaint contained probable cause for the additional offenses listed in the trial court's findings of facts. That a non-lawyer like Detective Halbardier might have inadvertently misinterpreted appellant's post-offense behavior as part of the original offense rather than it's own distinct conduct should not render the warrant invalid just as it did not in the cases of *Borsari v. State* and *Villegas v. State*. Alternatively, and for the same reasons, the arresting officer was relying on objective good faith under 38.23(b) of the Texas Code of Criminal Procedure. Both of these interpretations are consistent with common sense, non-technical way courts typically analyze warrants.

**REPLY POINT 1:** THE TRIAL COURT PROPERLY DENIED APPELLANT'S MOTION TO SUPPRESS BECAUSE THE ARREST WARRANT WAS SUPPORTED BY PROBABLE CAUSE. IN THE ALTERNATIVE, THE ARRESTING OFFICER PROPERLY RELIED ON OBJECTIVE GOOD FAITH UNDER SECTION § 38.23(B) OF THE CODE OF CRIMINAL PROCEDURE WHEN HE ARRESTED APPELLANT.

**A. Standard of Review**

**1. Magistrate's Determination Of Probable Cause**

Appellant incorrectly states *de novo* as the the standard of review for reviewing a magistrate's determination of probable cause. When reviewing the adequacy of the affidavit or complaint for a search or arrest warrant the reviewing court applies a highly deferrential to the magistrate's determination of probable cause and *does not* conduct a *de novo* review. State v. McLain, 337 S.W.3d 268, 272 (Tex. Crim. App. 2011); Rodriguez v. State, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007); Swearingen v. State, 143 S.W.3d 808, 809-811 (Tex. Crim. App. 2004).

Admittedly, the above cases dealt with the review of a magistate's determination of probable cause for a search warrant. McLain, 337 S.W3d at 272; Rodriguez, 232 S.W.3d at 61; Swearingen, 143 S.W.3d at 809. However, that standard has been repeatedly applied to arrest warrants by state appellate courts, including this one. Guerrero v. State, 2009 WL 2525434 (Tex. App.—San Antonio 2009, pet. ref'd), *cert. denied*, 131 S.Ct. 462 (2012) (not designated for publication); State v. Jimenez, 2008 WL 3823998 (Tex. App.—Dallas 2008, pet. ref'd) (not designated for publication); Glaze v. State, 230 S.W.3d 258, 259 (Tex. App.—Waco 2007, pet. ref'd); Bell v. State 169

S.W.3d 384, 390 (Tex. App.—Ft. Worth 2005, pet. ref'd); <u>Shelton v. State</u>, 2013 WL 5773692 (Tex. App.—Tyler 2013, no pet.) (not designated for publication); <u>See Ozuna v. State</u>, 88 S.W.3d 307, 310 (Tex. App-San Antonio 2002, pet' ref'd) (decided before *Swearingen,* but applied "great deference" to a magistrates determination of probable cause). In addition, the Court of Criminal Appeals has made it clear that the same standard of review applies to the affidavits of both search and arrest warrants. <u>Hankins v. State</u>, 132 S.W.3d 380, 388 (Tex. Crim. App. 2004), *superceded by statute on other grounds*, Tex. Crim. Proc. Code Ann. § 37.071(2)(e)(2)(B) (West 2013); <u>Jones v. State</u>, 833 S.W.3d 118, 123 (Tex. Crim. App. 1992) .

### 2. Standard of Review For All Remaining Issues

Though appellee firmly believes the trial court properly upheld the magistrates determination of probable cause, should this Honorable Court determine that it did not, appellee offers additional arguments in the alternative. The standard of review for those arguments is the traditional standard of review used in motions to suppress.

Under that standard, appellate courts give almost total deference to the trial court's determination of historical fact and mixed questions of law and fact that rely on the credibility of a witness. <u>Martinez v. State</u>, 348 S.W.3d 919, 923-24 (Tex. Crim. App. 2011); Questions of law and mixed questions of fact and law that do not depend on credibility determinations are reviewed *de novo*. <u>Martinez</u>, 348 S.W.3d 923-924; <u>Guzman v. State</u>, 955 S.W.3d 85-87-89 (Tex. Crim. App. 1997).

Finally, regardless of which standard of review applies, appellate courts must sustain the trial court's ruling if it concludes that the trial court's decision is correct under *any* theory of law. Ross v. State, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000).

**B. The Affidavit Supports The Magistrates Determination of Probable Cause Because There Was At Least A Probaility That Appellant Committed The Offense of Engaging In Organized Criminal Activity By Conspiring To Committ The Underlying Offense of Aggravated Assault And/Or As A Party To That Offense.**

When reviewing a magistrates determination of probable cause, appellate courts look to the four corners of the affidavit or complaint. McFarland v. State, 928 S.W.3d 482, 509 (Tex. Crim. App. 1996); Jones v. State, 833 S.W.3d 118, 123 (Tex. Crim. App. 1992). The affidavit or complaint must provide the magistrate with sufficient information to support an independent judgment that probable cause exists for the warrant. McFarland, 928 S.W.3d at 509, Jones, 833 S.W.3d at 123. However, it need not contain sufficient evidence that would convince a jury of a defendant's guilt beyond a reasonable doubt. McFarland, 928 S.W.3d at 509. Instead, the reviewing court's duty is to determine if there are sufficient facts, coupled with inferences from those facts, to believe that there is a fair probability that the accused committed an offense. Rodriguez, 232 S.W.3d at 62 Moss v. State, 75 S.W.3d 132, 140 (Tex. App.—San Antonio 2002, pet. ref'd).

An affidavit or complaint in support of a warrant is to be interpreted in a common sense and realistic manner, not a hypertechnical one. Rodriguez, 232 S.W.3d at 61. Realistic inferences may be drawn from the facts set forth in the complaint. Jones, 833 S.W.3d at 123. "When in doubt, the reviewing court is to defer to all reasonable inferences that a magistrate *could* have made." Rodriguez, 232 S.W.3d at 61 (emphasis

10

added). A determination of whether probable cause exists is made by examining the totality of the circumstances. Jones, 833 S.W.3d at 123.

In addition, when making a probable cause determination, the magistrate may find probable cause even when the affidavit is based on unnamed informants or witnesses. Ozuna, 88 S.W.3d at 310; Barton v. State, 962 S.W.2d 132, 134-138 (Tex. App-Beaumont 1997, pet. ref'd); Belton v. State, 900 S.W.2d 886, 894 (Tex. App.—El Paso 1995, pet. ref'd).

Generally, when evaluating an unnamed informant a reviewing court looks to the veracity or reliability of the informant and their basis of knowledge. Ozuna, 88 S.W.3d at 310. The arrest affidavit need not prove both and a deficiency in one may be offset by a strong showing in another. Id. However, if the unnamed individual or victim is an eyewitness to the offense and, thus, " 'is the direct source of the information conveyed to the magistrate via a police officer', corrbortive facts and other indicia of reliability are unncessessary." White v. State, 746 S.W.2d 775, 778 (Tex. App—Dallas 1985, no pet.) (quoting Cummings v. State, 651 S.W.2d 14, 15 (Tex. App.—Amarillo 1983, no pet.); Belton, 900 S.W.3d at 894; Jimenez, 2008 WL 3823998. In other words, a person who is neither a paid informant nor associated with the police is inherently trustworthy when they advise the police of a crime. Salio v. State, 910 S.W.2d 184, 188 (Tex. App.—Ft. Worth 1995, pet. ref'd). This is because such people have put themselves in a position to be held accountable for their intervention. Id.

The trial court correctly held that the arrest warrant was supported by probable cause for engaging in organized criminal activity. A person commits that offense "if, with

11

the intent to establish, maintain, or participate in a combination or in the profits of a combintation or as a member of a criminal street gang, the person commits or conspires to commit one of the following offenses…(1) aggravated assault." Tex. Penal Code Ann. § 71.02(a)(1) (West 2013).

In his brief, appellant asserts that there is no evidence tying him to the offense. However, appellant omits a number of key facts and rational inferences that could have been made by the issuing magistrate. First, a person can commit the offense of engaging in organized criminal activity either by committing one of the underlying offenses as a member of a criminal street gang or by *conspiring to commit* one of the underlying offenses. See Id. Under the engaging in orgazined criminal activity statute, conspiring to commit means:

> that a person agrees with one or more persons that they or one or more of them engage in conduct that would constitute an offense and that person and one or more of them perform an over act in pursuance of the agreement. An agreement constituting conspiring to commit may be inferred from the acts of the parties

Tex. Penal Code Ann. § 71.01(b) (West 2013). Conspiring to commit an offense, even under the engaging statute, can be based on acts that occurred before, during, or after the offense and can be inferred from the acts of the offender.  See Id; See Barrera v. State, 321 S.W.3d 137, 154 (Tex. App.—San Antonio 2010, pet. ref'd).[4]

---

[4] In *Barrera,* the defendant was charge with engaging in organized criminal activity under the "conspiracy to commit" aggravated kidnapping as a party. Barrera, 321 S.W.3d at 152. When describing the Court of Criminal Appeals decision in *Otto v. State*, this court stated that "[t]he Court noted appellant's position as leaders of the combination and held that their involvement in the *planning, execution, and aftermath* of the kidnapping was tantamount to encouraging, directing, aiding, or attempting to aid in the offense, and therefore, authorized a conviction under the law of parties. Id. at 154 (citations omitted, emphasis added).

In the complaint, the victim said that just prior to the assault he was asked by Longoria what gang he belonged to. When Herrera said "Orejones," Longoria told to deny that because this was an "Eme" or "Merecido" area. As noted earlier in the complaint "Merecido" is a reference to the Mexican Mafia, which is a well known criminal street gang. Shortly thereafter, Longoria motioned to Lomas and Gonzales who approached appellant and, along with several others, attacked appellant from behind. According to Herrera, who is corroborated by UW1, those inviduals included Longoria, Lomas, Roy Rodriguez, and Danny Gonzales. As the complaint notes, Gonzales and Longoria are documented members of the Mexican Mafia, while Rodgiguez and Lomas have been known by law enforcement to frequently associate with Mexican Mafia members. Given that Longoria quickly signals several other Mexican Mafia members to attack Herrera from behind immediately after Herrera states his affiliation and exits his vehicle indicates that the magistrate could, at a minimum, rationally infer that Herrera was set-up. In other words, that the offenders had conspired to commit the assault in advance. This inference is supported by UW3's statements to police.

During the investigation, UW3 told Detective Diaz appellant showed up sometime later and threated UW3. UW4 made similar statements. UW3 also stated that he observed one of the assailants, Danny Gonzales, conversing with a high-ranking member of the Mexican Mafia. Specifically, UW3 said he heard Gonzales say the assault was set up by Christopher Lopez, another documented Mexican Mafia member, in retaliation for Herrera stealing narcotics from appellant. When UW3's statement is combined with the planned nature of the assault, the magistrate can properly infer that this was a sanctioned

13

hit by the Mexican Mafia in retaliation for Herrera's theft of appellant's narcotics. It is also rational to infer that appellant was part of that planned retaliation when the whole point of the assault was revenge for an offense against appellant. This inference is further supported by appellant's place in the gang that committed the assault.

The complaint states that appellant is a documented member of the Mexican Mafia based an National and State data base information searches, a well as a Lieutenant within the gang, and has, in the past, been named as a the leader of the Mexican Mafia in Seguin. It would naturally be proper for a magistrate to infer that any sanctioned assault by the Mexican Mafia would go through its leadership. This inference is supported by Gonzales's conversation with another high ranking member of the gang. Appellant was not only a part of that leadership, but, according to the complaint was its leader within the city of Seguin. As a result, the magistrate can infer that appellant was part of the agreement to commit the assault against Herrera. An inference that is further supported by appellant's own attempts to silence witnesses in order to cover up a crime whose sole objective was revenge for a slight against appellant.

In short, when the affidavit is viewed in a common sense manner with proper deference given to the magistrate's determination of probable clause it is clear that the arrest warrant is supported by probable cause. It is basic common sense for a magistrate to believe appellant was involved in conspiring to commit a crime that was clearly set-up beforehand, that was set-up on his behalf, that appellant helped cover up, that was perpetrated by a well-known criminal street gang that appellant led within the city of Seguin.

Additionally, the magistrate could also have concluded from these facts and inferences that appellant was a party to the offense. While appellant's citation to *Gamez v. State* and *Creel* correctly sites the basic rule regarding the law of parties and post-offense behavior, it's citation is an incomplete one. A person can still be a party as an accessory after the fact. <u>See</u> <u>Creel v. State</u>, 754 S.W.2d 205, 213 (Tex. Crim. App. 1988) (noting that an "accomplice witness is an individual who participated with the accused before, during and *after* the commission of the crime for which he is on trial) (emphasis added). If there is an agreement prior to the crime for that person to act as an accessory after the fact then they can be prosecuted as a party to the offense. <u>Husting v. State</u>, 790 S.W.2d 121, 124 (Tex. App—San Antonio 1990, not pet.). Moreover, in determining whether someone is a party a court can look to conduct that occurred before, during, and after the offense. <u>Beier v. State</u>, 687 S.W.2d 2, 3-4 (Tex. Crim. App. 1985).

As noted above, the facts listed in the affidavit combined with rational inferences would allow the magistrate to conclude that appellant had helped conspire to commit the offense against Herrera. Therefore, by extension, that magistrate could also reasonably conclude part of his agreement to commit the engaging in organized criminal activity was to help cover it up by preventing its investigation and prosecution.

Finally, to the extent that appellant complains that the information came from unnamed witnesses that complaint is without merit. The magistrate could properly rely on them as they were known eyewitness whose statement were corroborated and who possessed a very strong basis of knowledge. UW1 had a history of providing reliability information to the Seguin Department and his basis of knowledge was his own

15

observations. Likewise UW3 and UW4, were also eyewitness (and victims) who, according to the affidavit, viewed the facts that they provided to Detective Diaz. That they provided those statements directly to the police means the police knew who they were and could hold those witness accountable for their statements. See Salio, 910 S.W.2d at 188. Additionally, their status as known (though unnamed) eyewitness means additional coorberation was unnecessary. See White, 746 S.W.2d at 775. Nevertheless, such corroboration existed. Specifically, UW1's statements are corroborated by Herrera while UW3 and UW4's statements corroborate each other. Therefore, the magistrate was perfectly justified in relying on these statements in making his determination.

**C. In The Alternative, The Trial Court Properly Denied Appellant's Motion To Suppress Because The Affidavit Contains Probable Cause For All Of The Additional Offenses Listed By The Trial Court. Based On These Findings The Warrant Should Be Upheld As Valid. In Addition, The Arresting Officer Properly Relied On That Warrant Under The Good Faith Exeption Listed In Section § 38.23(b) Of The Code Of Criminal Procedure.**

**1. The Trial Court Properly Held That Detective Halbardier's Affidavit Contained Probable Cause For The Additional Offenses of Conspiracy To Commit Aggravated Assault, Aggravated Assault As A Party, Obstruction or Retaliation and Witness Tampering.**

Should this Honorable Court hold that the affidavit does not contain sufficient probable cause for the offense listed in the warrant, the warrant is still valid because it is supported for the additional offenses listed by the trial court in its findings of facts, namely: conspiracy to commit aggravated assault, aggravated assault as a part, obstruction or retaliation and witness tampering. Appellant does not appear to dispute the trial court's findings of probable cause for these, but in the interest of completeness and to the extent that appellant does disagree with them, appellee will cover them briefly.

16

A person commits criminal conspiracy if "with the intent that a felony be committed he agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense and he or one or more of them performs an overt act in pursuance of the agreement. Tex. Penal Code. Ann. § 15.02(a) (West 2013). The primary difference between that and engaging in organized criminal activity's "conspiring to commit" language is "conspiring to commit" requires that appellant personally commit some act in furtherance of the conspiracy while traditional conspiracy only requires any member do so before they can be punished for the agreement. <u>Barrera</u>, 321 S.W.3d at 141-42 (citing <u>Barber v. State</u>, 764 S.W.2d 232, 235 (Tex. Crim. App. 1988)). Consequently, if the offense the defendant conspires to commit under section 71.02(a) is a felony then by extension he has also conspired to commit that offense under section 15.02(a). In Part 1B, appellee sets forth at length the reasons the complaint supports a finding of probable cause for engaging in organized criminal activity by conspiring to commit the offense of aggravated assault. For those same reasons, the complaint also supports a finding of probable for conspiracy to commit aggravated assault under section 15.02(a) of the Texas Penal Code.

Additionally, the primary difference between committing the offense of engaging in organized criminal activity as a party and committing the underlying aggravated assault as a party is that the latter would not require proof that the offense be commited either pursuant to a combination or as part of a criminal street gang. See Tex. Penal Code. Ann. § 71.02(a) (West 2013); See Tex. Penal Code. Ann. § 22.02 (West 2013) Consequently, the same reasons that support a finding of probable cause that appellant committed the

17

offense of engaging in organized criminal activity as a party also support a finding that appellant committed the offense aggravated assault as a party to the offense.

Finally, there is is little doubt that appellate's post-offense conduct constituted probable cause for the offenses of obstruction or retaliation and witness tampering. A person commits the offense of obstruction or retaliation "if he intentionally harms or threatens to harm another by an unlawful act in retaliation for or on account of the service or status of another as a…witness, prospective witness, or informant." Tex. Penal Code Ann. § 36.06(a)(1) (West 2013). Likewise, a person commits witness tampering if "with the intent to influence the witness he…coerces a witnesss or prospective witness in an official proceeding to (1) testify falsely, (2) to withhold any testimony, information, document or things…" Tex. Penal Code. Ann. § 35.05(a)(1)-(2) (West 2013).

The only purpose appellant could have had in threatening UW3 (and (UW4)) to not speak to the officers was to either prevent him from reporting the assault on Herrera or to withhold testimony or information law enforcement for the purpose. This is confirmed when appellant tells UW3 not to talk to the police about the incident. It is also supported by the fact that his co-defendant Gonzales was also instructing both UW3 and UW4 to not speak to the police. The magistrate and trial court or could reasonable concludee that the reason they were threatened was because their status as witnesses or prospective witnesses. And though the threats are not specified, it would be rational to infer from the circumstances that harm via an unlawful act would come to both witness should they disobey appellant and speak to police.

**2. Because The Warrant Contained Probable Cause For The Additional Offenses Listed By The Trial Court The Warrant Should Be Upheld Just As The Warrant In *Borsari v. State* and *Villegas v. State* Was Under Very Similar Circumstances.**

The core of appellant's argument regarding the additional offenses listed by the trial court is that allowing the warrant to stand on findings of probable cause for those offense violates section 15.02(2) of the Texas Code of Criminal Procedure. Appellant's argument is misplaced and erroneously treats section 15.02(2) as the beginning and end of the issue. In *Borsari v. State*, the 14th Court of Appeals faced the same issue. In that case, a combination arrest-search warrant was issued that listed the violated offense as attempted capital murder when the affidavit supported the offense of solicitation of capital murder (the offense for which Borsari was charged and convicted). Borsari v. State, 919 S.W.2d 913, 915 (Tex. App.—Houston[14th] 1996, pet. ref'd). In addressing Borsari's argument that this error rendered the warrant invalid, the Court of Appeals held that:

> In reviewing the affidavit in support of the arrest-search warrant in a common sense manner under the standards noted above, we find the the affiant alleged to support a reasonable inference that appellant committed an inchoate offense in anticipation of commiting capital murder. Criminal attempt and solicitation are both inchoate crimes. ***It is of no consequence that the affiant may have reached the wrong legal conclusion in assessing the facts available to him.***

Id. at 918-19 (citations omitted, emphasis added).

In support of its position the Court cited the case of *Villegas v. State* and *Hall v. State*. Id. *Villegas* dealt with a similar situation. Villegas v. State, 791 S.W.2d 226, 234-35 (Tex. App-Corpus Christ 1990, pet. ref'd) In that case, the affidavit in support of an arrest warrant for capital murder only supported a charge of murder. Id. at 235. The court

19

in that case upheld the validity of the arrest warrant and in the process made it a point to note that the affidavit was drafted by an officer operating without legal advice. Id. Finally, in *Hall* the court of appeals upheld an arrest warrant that was supported by an affidavit citing the wrong statute that Hall was accused of violating. Hall v. State, 753 S.W.2d 438, 441 (Tex. App--Texarkana 1988), *overruled on other grounds*, 75S.W.2d 195 (Tex. Crim. App. 1990).

The question before those courts, especially in *Borsari*, is much like the one facing this Court, especially as it relates to the offenses of conspiracy to commit aggravated assault, obstruction or retaliation, and witness tampering. Though the elements for those offenses differ from engaging in organized criminal activity, the meaningful distinction that applies in this case is the characterization of appellant's post-assault behavior. Specifically, whether that behavior was indicative of his intent to commit engagining in organized criminal acticity (either via conspiracy to commit or as a party), whether it was post-offense conduct that either constituted his own criminal conduct (obstruction or retaliation and witness tampering), and/or whether it was merely evidence of his involvement in the overall conspiracy without arising to the level of an affimative act under 71.02(b)'s definition of "conspiracy."

Though cases like *Gamez* state the general rule, it is important to note that statements like those in *Hursting v. State* make it clear post-offense conduct can still bind someone as a party under certain circumstances. See Hursting, 790 S.W.2d 121, 124. In addition, post-offense behavior can also be used as evidence that a person is a party or a member of a conspiracy. Beier, 687 S.W.2d at 3-4 (party); See Miller v. State, 83 S.W.3d

20

308, 314 (Tex. App.—Austin 2002, pet. ref'd) (conspiracy). The point is whether a person's post-offense criminal conduct is its own separate offense, something that binds them as a party, or evidence of a conspiracy will vary from case to case and can turn on a single fact. There is no absolute rule as to which of the three it will fall under and it can even fall under more than one of them.

It is not hard to imagine and, in fact, it is entirely reasonable to expect that a non-lawyer like Halbardier may inadvertently and erroneously, though understandably, misinterpret conduct like appellant's as something that makes someone a party to the underlying offense when it might be its own separate offense. It is also incredibly easy to see how a non-lawyer like Halbardier could misinterpret appellant's post-offense conduct as part of the original offense when that conduct was aimed at covering up an offense that, at a minimum, was commited by an organization he ran within the city and was committed in retaliation for a theft he was the victim of.

Additionally, appellee sees little difference between the situation before the courts in *Borsari* and *Villegas*. In both instances, the affiviant supporting the arrest warrant contained probable cause for an offense other than the one alleged on the face of the warrant. See Borsari, 919 S.W.2d at 915; See Villegas, 791 S.W.2d at 234-35. In both cases, the warrant was upheld as valid despite this error with the court in *Borsari* explicitly stating that it did not matter that the affiant may have selected the wrong inchoate offense. See Borsari, 919 S.W.2d at 915. Consequently, just as the officer's error was of no consequence in *Borsari*, Halbardier's potential mischaracterization of

21

appellant's post-offense conduct as part of the original offense (as opposed to it's own seperate offense) should be of no consequence.

Such a holding is also consistent with how courts typically interpret warrants. Specifically, the whole reason that affidavits or complaints should be interpreted in a common sense non-technical manner is because they are frequently drafted by non-lawyers who have no formal legal training and who are frequently in the midst of an active investigation. United States v. Ventresca, 380 U.S. 102, 108-09 (1965); State v. Jordan, 342 S.W.3d 565 (Tex. Crim. App. 2011) (n.8). In addition, Texas law permits non-lawyers to serve as Justice of the Peace while also permitting them to sign arrest warrants. Tex. Crim. Proc. Code Ann. 45.014 (West 2013); See Tex. Elec. Code Ann. § 141.001 (West 2013).[5]

Appellant's position would effectively grant both the affiant and the magistrate latitude in drafting/reviewing an affidavit in common sense, non-technical manner, but then be hypertechnical in regards to their legal conclusions despite the fact that the rational for applying the common sense standard exists in both circumstances. In both cases the drafting and review of these warrant is frequently done by people who are not attorneys and have no formal legal training. Appellee, does not argue for an absolute rule and only asks this court to apply the same reasonableness and common sense applied in *Borsari* and *Villegas*.

---

[5] Chapter 27 of the Texas Government Code does not lay out any special requirements for Justices of the Peace (unlike Chapter 25's for County Court and for example) of the peace and therefore, the Election Code's general requirements for holding public office would be used. See Tex. Gov't Code Ann. § 25.0014 (West 2013); See Tex. Gov't Code Ann. §§ 27.001-27.061 (West. 2013).

22

As to appellee's claim that such a reading violates section 15.02(2) of the Code of Criminal Procedure that argument is misplaced. The warrant listed an offense: engaging in organized criminal activity. It is the offense that Halbardier understandably, though possibly erroneously, believed appellant had committed. Though not ruling on the issue of section 15.02(2) specifically, the Court in *Borsari* upheld the warrant as valid as is as did the court in *Villegas* despite the fact that the affidavit provided probable cause for a different offense.

**3. Because The Warrant Was Support By Probable Cause For the Additional Offenses Listed By The Trial Court Investigaor Campos Acted In Objective Good Faith Reliance On The Warrant.**

Alternatively, because the warrant contained probable cause for the additional offenses, Investigator Campos acted in objective good faith on the warrant when he arrested appellant. Section 38.23(b) of the Texas Code of Criminal Procedure states:

> [i]t is an exception to the provisions of Subsection (a) of this Article that the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause.

Tex. Crim. Pro. Code Ann. § 38.23(b) (West 2013).

Appellee erroneously claims that Section 38.23(b) does not apply because the warrant is not supported by probable cause. The obvious implication of appellant's argument is the "probable cause" mentioned by 38.23(b) refers only to the probable cause of the offense listed on the face of the arrest warrant and that any additional probable cause for any other offense is immaterial. Appellant cites no authority for his position.

23

Instead, this kind of case is an obvious one for the application of 38.23(b). As argued at length in Part 1C2, the real distinction between the unlisted offenses, notably obstruction or retaliation, witness tampering, and conspiracy to commit aggravated assault, is the characterization of appellant's post-offense conduct. As also argued at length in that section, it is easy to see how a person without formal legal training, like Halbardier, could misinterpret post offense behavior as being a part of the original offense as opposed to a separate and distinct offense. In the case at bar, Halbardier made a good faith interpretation of the facts before him and should not be punished for not being a lawyer.

It would be one thing if the complaint was completely devoid of any kind of probable cause for any crime, but that is not the case. At worst, all Halbardier did is come to the incorrect, though understandable, legal conclusion about the specific nature of appellant's post-offense conduct. Reading section 38.23(b) in this manner is also consistent with the way appellant courts typically interpret warrants: in a non-technical and common sense manner. See Ventresca, 380 U.S. at 108-09. Likewise, it avoids placing non-attorney's in the position of having to know all the nuances of law when they lack that specific type of training. Otherwise, courts may as well require that all affidavits and complaints be filled out by practicing attorneys. Appellant's excessively rigid reading of section 38.23(b) would demand such perfection in an area of the law where courts have repeatedly said common sense, not hypertechnicality and perfection, is the standard.

## CONCLUSION AND PRAYER

WHEREFORE, appellee respectfully prays that this court uphold the trial court's

denial of appellant's motion to suppress.

/s/Christopher M. Eaton
Christopher M. Eaton
Assistant County Attorney
Guadalupe County, Texas
State Bar No. 24048238
211 W. Court St., 3rd Floor
Seguin, Texas 78155
Phone: (830) 303-6130
Fax: (830) 379-9491
**Attorney for Appellee**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this document was served by email toAppellant's attorney Ed Shaughnessy at Shaughnessy727@gmail.com on the 9th Day of April, 2015.

/s/Christopher M. Eaton
Christopher M. Eaton
